Edward Perkins, et al., Plaintiffs-Appellants, v. Chicago Transit Authority, Defendant-Appellee.

**Gen. No. 50,011.**

First District, First Division.

June 21, 1965.

Caliendo and Connor, of Chicago (James M. P. D'Amico, of counsel), for appellants.

William J. Lynch, William S. Allen, Jerome F. Dixon, and Paul Denvir, all of Chicago, for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

In this personal injury action, the plaintiffs appeal from a judgment which was entered for the defendant on a directed verdict at the conclusion of the plaintiffs' evidence.

The record shows that between 8 and 8:30 on the morning of December 23, 1959, the plaintiffs were on their way to work in a car driven by the plaintiff Perkins. Plaintiff Deacy was seated next to Perkins in the front seat and the plaintiff Callahan was in the rear seat. The plaintiffs, who had been proceeding west along 26th Street in Chicago, had stopped at California Avenue. At this intersection, 26th Street was 40 feet wide with two east-bound and two west-bound lanes. The intersection was controlled by traffic lights. The car in which the plaintiffs were riding had stopped for a red light in the curb lane on the north side of 26th Street; there were no cars ahead of them; in the lane immediately to the plaintiffs' left there was a truck which obscured plaintiffs' view to the left. When the traffic light controlling the

plaintiffs' movements turned directly from red to green, the truck pulled out but stopped suddenly. The plaintiffs' car proceeded ahead at about five or six miles per hour. As their car passed the truck, the driver, Perkins, applied his brakes and the car skidded into the side of the defendant's bus which was proceeding north on California Avenue. Plaintiff Callahan testified that he heard no horn prior to the collision; no other witness testified on this subject. The car struck the bus just behind the front wheel of the bus, a distance which was placed at between five and eight feet behind the front bumper of the bus. The traffic light controlling the movement of the bus was set to show green for 32 seconds (during which time the traffic light controlling the plaintiffs' movements showed red); the light facing the bus was then set to show green and amber for three seconds (during which time the plaintiffs' light remained red); finally the light facing the bus was set to turn red (at which time the plaintiffs' light turned directly from red to green).

At the trial the plaintiff Deacy was asked about a conversation he had with the defendant's driver after the occurrence. The testimony was as follows:

Q. Now, Mr. Deacy, after the impact that you got to the car—

A. I got out of the car.

Q. Did you observe the driver of the bus?

A. I did because—I took his number.

. . . . . .

Q. And where was he when you first saw him?

A. He was behind the wheel.

433

Q. Did he look unusual to you in any way?

A. He was a little excited.

Q. Did you have any conversation with him?

A. Yes. I asked for his number.

Q. And what, if anything, did he say to you?

Mr. Denvir [defendant's counsel]: Object to the "conversation."

A. He admitted going into a red light.

Mr. D'Amico [plaintiffs' counsel]: Who, besides yourself and the bus driver, were present during the conversation?

A. He was handing out some cards to passengers. Wanted them to sign it.

Q. And what, if anything, did you say to him?

At this point, the defendant's counsel objected again and the court sustained the objection.

At the close of their case, the plaintiffs moved to amend their complaint to conform to the proof by alleging that the defendant had operated his vehicle in violation of the Chicago Municipal Code, chapter 27, section 264, paragraph (a), relating to the duty of a driver to give an audible warning when reasonably necessary to insure the safe operation of the vehicle. The court denied the motion. The defendant moved for a directed verdict in its favor. The court granted this motion and entered judgment on the verdict.

██ We have concluded from a consideration of the evidence presented at trial that the cause should not have been taken away from the jury. On appeal from the granting or denial of a motion for directed verdict, the question is whether there is any evidence which, standing alone and taken with all its intendments most

favorable to the party resisting the motion, tends to prove the material elements of his case. Lindroth v. Walgreen Co., 407 Ill 121, 94 NE2d 847.

When it is considered in this manner, the evidence in this record shows that, just before the occurrence in question, the car in which the plaintiffs were riding had stopped at the involved intersection and that the plaintiffs were waiting for the traffic light to change from red to green; that the light did change from red to green indicating that the light controlling the defendant's movement had changed to red after a three-second period during which the defendant's signal showed green-amber; that the truck to the plaintiffs' left was the first to proceed into the intersection for a short distance; that after the truck stopped suddenly the plaintiffs continued to move into the intersection, passing the truck; and that when the driver of the car saw the defendant's bus proceeding through the intersection he applied his brakes causing the car to slide into the side of the bus which continued to come through the intersection.

██ From the evidence, the jury could properly have found either one of two things. First they could reasonably have found that the defendant's bus driver proceeded into the intersection against a red light in violation of section 32(c)1 of the Uniform Act Regulating Traffic on Highways (Ill Rev Stats 1963, c 95½, § 129 (c)1). The jury could have reasoned that since several seconds passed between the time of the collision and the time the plaintiffs' light had turned green, a bus which was proceeding at a reasonable rate of speed for the conditions of the road must have entered the intersection after its light had turned from green-amber to red. Second, the jury could have found that even though the defendant's driver did not enter the intersection against a red light, he negligently failed to sound his horn as he was required to do by the ap-

plicable ordinances and statutes. The plaintiffs' motion to amend their complaint to conform to the proof relied only on the Chicago Municipal Code, chapter 27, section 264, paragraph (a), but since section 115 of the Uniform Act Regulating Traffic on Highways (Ill Rev Stats 1963, c 95½, § 212) is substantially similar to the Chicago ordinance, the statute can be relied on in this appeal. The ordinance and the statute both require the driver of a motor vehicle to give an audible warning with his horn "when reasonably necessary to insure safe operation" of the vehicle. We believe that the jury could reasonably have found on the evidence presented that the defendant's driver started through the intersection when his traffic light showed green-amber; that he saw the truck in the centermost westbound lane of 26th Street; that before he reached the center of 26th Street his light turned from green-amber to red and, at the same time, the light facing the truck and the plaintiffs' car turned green; and that the bus driver saw the truck start up and then come to a sudden halt after the truck driver saw the bus approaching. We believe that the jury could reasonably conclude that, at that point, it was reasonably necessary to insure the safe operation of the bus for the driver to sound his horn in order to give a warning of his intention to continue across the intersection to any drivers who might be in the westbound curb lane on 26th Street, and who had the green light, but whose vision of the bus was obscured by the truck. As we said in Schmitt v. Chicago Transit Authority, 34 Ill App2d 67, at 78, 179 NE2d 838, ". . . it was a question of fact for the jury to consider whether it was 'reasonably necessary' for the bus driver to sound his horn." We conclude that the trial court should have granted the plaintiffs' motion to amend their complaint to conform to the proof and should have denied the defendant's motion for a directed verdict.

■ We have reached our conclusions without the necessity of considering the evidence of the bus driver's admission which was excluded by the trial court. However, since on remand the question of the admissibility of that testimony will probably arise again, we find it necessary to rule on that question. It is undisputed that the testimony of the plaintiff, Deacy, concerning what the driver of the bus told him after the collision is hearsay. The question presented is whether that testimony is admissible under some exception to the hearsay rule. We are of the opinion that it is admissible under the spontaneous declaration or excited utterance exception to the hearsay rule. The elements of this exception, which was formerly called the res gestae exception,* were defined in People v. Poland, 22 Ill2d 175, 174 NE2d 804, in these terms:

> Three factors are necessary to bring a statement within this exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflective statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. (22 Ill2d at page 181.)

---

* The change in nomenclature from "res gestae" to "spontaneous declaration or excited utterance" was made because of the confusion which the old terminology had created. See 6 Wigmore, Evidence, 3rd Ed, 1940, sec 1745 and following and People v. Poland, 22 Ill2d 175, 174 NE2d 804, in which the Supreme Court stated: "That amorphous concept [res gestae] has been applied indiscriminately to a multitude of situations, some of which contain no element of hearsay at all, while others involve true exceptions to the hearsay rule. As applied to the situation involved here, we think that the term 'res gestae' not only fails to contribute to an understanding of the problem but may actually inhibit any reasonable analysis. We prefer, therefore, to use less confusing terminology in discussing the problem." (22 Ill2d at page 180.)

See also these cases which follow the Poland case: People v. Kelley, 29 Ill2d 53, 193 NE2d 21.; People v. Damen, 28 Ill2d 464, 193 NE2d 25; Darling II v. Charleston Memorial Hospital, 50 Ill App2d 253, 200 NE2d 149.

■ We believe that all the elements of the exception are present in the instant case. There can be no doubt that the bus driver's declaration that he went through a red light relates to the circumstances of the occurrence. Further, we believe that the collision of a bus and a car is the type of occurrence which may produce a spontaneous and unreflecting statement. Indeed, there is testimony here that the bus driver did appear to be excited after the collision. Finally, we believe that there was an absence of time to fabricate. From the testimony set out above, it appears that the witness Deacy saw the bus driver behind the wheel of his bus, that the driver looked excited and that Deacy had a conversation with him. It is reasonable to believe that the conversation took place almost immediately after the collision allowing only such time as it may have taken Deacy to get out of the car and walk to the bus. The testimony that, during the conversation, the driver passed out cards to passengers does not indicate that the statement in question was made by the bus driver more than a short time after the collision. As was stated in the Poland case, cited above, the fact that the statement did not coincide exactly in time and place with the event does not control; the pertinent point is whether there was sufficient time to allow an opportunity for reflection and invention. Indeed, in Poland some time had passed between the time the fatal shots were fired and the time the witness went to her apartment door, opened it and heard the declarant's statement.

■ The defendant also contends that the statement involved here is not admissible under this exception

438

to the hearsay rule because it was made by an agent of the defendant. We have examined the cases cited for this proposition and have found that they do not support the defendant's argument. On the contrary, the older cases, using the old res gestae terminology, specifically state that declarations of agents are admissible against their principals if they are a part of the res gestae. Lowden v. Wilson, 233 Ill 340, 84 NE 245; Johnson v. Swords Co., 286 Ill App 377, 3 NE2d 705. Moreover such a limitation on the exception would not be consistent with the underlying reason for the exception which was stated by Wigmore (6 Wigmore, Evidence, 3rd Ed, 1940, sec 1747), who, in turn, was quoted in the Poland case (22 Ill2d at pages 180, 181) as follows:

> This general principle is based upon the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts.

Because we believe that the plaintiffs introduced evidence which was sufficient to justify a jury in finding that the defendant was negligent, and that the

plaintiffs were exercising ordinary care, the judgment of the trial court, entered for the defendant on a directed verdict, must be reversed and the case remanded for a new trial not inconsistent with the views herein expressed.

Reversed and remanded.

MURPHY and KLUCZYNSKI, JJ., concur.