THOMAS SCOTT, Plaintiff-Appellee, *v.* JAMES HERNON *et al.*, Defendants, —(THE CITY OF CHICAGO, Defendant-Appellant.)

(No. 53000;

First District—December 17, 1971.

*Rehearing denied February 8, 1972.*

Richard L. Curry, Corporation Counsel, of Chicago, (Marvin E. Aspen and Henry N. Novoselsky, of counsel,) for appellant.

John D. Hayes and Martin A. Smith, both of Chicago, for appellees.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

This is an action to recover damages for personal injuries suffered by plaintiff arising out of an automobile collision on April 6, 1962, between a cab driven by plaintiff, and defendant, James J. Hernon (hereafter "Hernon"). The defendant, City of Chicago (hereafter "City"), was joined in the suit based upon a defect or defects located in the street at the intersection where the collision occurred. Plaintiff alleged that negligent acts and omissions of Hernon and the City were jointly and severally the proximate cause of his injuries.

After the close of plaintiff's evidence, the City moved for a directed verdict. This motion was denied. At the close of all evidence the City again moved for a directed verdict. The trial court initially reserved its ruling but subsequently denied the City's motion.

Two special interrogatories were submitted to the jury. The first requested the jury to make a finding as to whether plaintiff was free from any contributory negligence which was a proximate cause of the collision. The second requested a special finding as to whether negligence of the City was a proximate cause of the injury to plaintiff.

The jury returned a verdict finding in favor of plaintiff and against both Hernon and the City, assessing damages in the sum of $125,000. The jury answered the special interrogatories finding plaintiff free from contributory negligence and the negligence of the City to be the proximate cause of plaintiff's injury.

A post-trial motion was filed by the City preseting motions for judgment

notwithstanding the verdict, new trial and remittitur. This motion was denied and judgment was entered on the verdict against defendants who both appealed, but on March 11, 1970, plaintiff's motion to dismiss the appeal of Hernon for failure to file briefs and abstract was allowed.

The City first contends that the trial court erred in denying its motions for a directed verdict and judgment notwithstanding the verdict. Plaintiff argues, however, that the answers of the jury to the two special interrogatories stand unchallenged and therefore the ruling by the trial court on the City's motions for directed verdict and judgment notwithstanding the verdict are not properly before this court. Plaintiff correctly claims that in its post-trial motion the City only sought: (1) a judgment notwithstanding the verdict; (2) a new trial; or (3) a remittitur. The City filed no motion to set aside the jury's special findings; made no objection to these findings in their post-trial motion; made no suggestion either here or in the trial court that they were contrary to the manifest weight of the evidence; nor did it make any reference whatsoever to the special interrogatories in its initial brief, but only in its reply brief. Plaintiff claims that the failure by a party to move in the trial court to set aside the answers of the jury to special interrogatories either by separate motion or by specific reference in the post-trial motion forecloses the point on review.

■■ In *Westlund v. Kewanee Public Service Co.*, 11 Ill.App.2d 10, defendant submitted a special interrogatory which the jury answered, "No." Defendant did not object in the trial court to the finding on the special interrogatory either in its motion for judgment notwithstanding the verdict, or its motion for a new trial, or by motion to set aside the special finding or otherwise. As the court at page 17 stated:

"A party is conclusively bound by a special finding of fact by a jury in answer to a special interrogatory submitted by him, unless specific objection thereto is made in or the question is raised in the trial court in the party's motion for new trial or motion to set aside the special finding of fact; the question is not preserved by the party's motion to direct a verdict, or by a general objection in his motion for new trial that the verdict is contrary to the manifest weight of the evidence; a special finding in and of itself, if properly objected to, is no more binding upon the party than is the general verdict, and he is entitled to question the correctness of the special finding upon a motion for new trial or motion to set aside the special finding, but the objection to a special finding in order to be effective must be specific, and a general objection in a motion for new trial that the verdict is contrary to the manifest weight of the evidence is not sufficient for that purpose: [Citing cases.]"

The City contends that even though it filed no separate motion objecting

to the special findings of the jury, in points 7 and 8 of its post-trial motion for judgment notwithstanding the verdict it preserved these special findings for review in this court:

"7. The plaintiff has failed to present evidence that the depression in the street located in the intersection of East End Avenue and Seventy-fifth Street where the plaintiff's cab collided at a right angle with the Hernon vehicle, proximately caused his injury.

8. The plaintiff has failed to establish that he was free from contributory negligence."

These allegations were realleged by the City in its motion for a new trial.

Section 68.1 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 68.1) states:

"A party may not urge as error on review of the ruling on his post-trial motion any point, ground or relief not particularly specified in the motion."

■■ The City argues that the issue is one of statutory construction and that this court must determine whether the strict formality of pleading is required; that "[t]he issue, therefore, becomes one of whether or not the above [paragraphs 7 and 8] constitutes sufficient 'specific reference' in defendant's [the City's] post-trial motion to preserve the issues of proximate cause and freedom from contributory negligence." The City concludes that the "magic words" using the term "special interrogatory" is not required for this court to review the jury's special findings based upon the City's statement of the subject matter of those findings set forth in its post-trial motion. However, based on the *Westlund* decision, we find that paragraphs 7 and 8 of the City's post-trial motion do not sufficiently specify its objections to the jury's special findings of fact nor particularly request that the jury's answers to the "special interrogatories" be set aside.

■■ The City also claims that even assuming it did fail to object with the requisite specificity, there was no waiver of the issue of the trial court's ruling on the motions for directed verdict. The City cites *Brimie v. Belden Mfg. Co.*, 287 Ill. 11, in support of its argument. The City argues that *Westlund, supra,* found its basis in *Brimie* and that from *Brimie* "[i]t is therefore obvious that the Supreme Court did not find the failure to object to the special finding as conclusive on the issue of error in ruling upon the motion for directed verdict but went to the evidence for a determination of the issue. There is no reason why this Court should not follow a similar course."

However, in *Brimie, supra,* 15, the court found:

"No motion was made by plaintiff in error to set aside this special find-

ing of fact in the trial court nor was any error assigned thereon, either in the Appellate Court or this court. It is, however, contended here that the question was preserved by motion made by plaintiff in error in the trial court requesting that court to direct a verdict for plaintiff in error, and was also preserved in the motion for new trial by the general objection that the verdict was contrary to the weight of the evidence. Under the rulings of this court neither of these points can be sustained."

We conclude that the jury's answers to the special interrogatories finding that the negligence of the City was a proximate cause of injury to plaintiff and that plaintiff was free of contributory negligence were decisive and the City is conclusively bound by these findings. (*Chase v. Morgan Cab Co.,* (Ill.App.2d), 1st Dist. 1971, No. 53520.) Therefore, the trial court properly denied the City's motions for a directed verdict and judgment notwithstanding the verdict.

■■ The City next contends that the trial court erred in denying its motion for a new trial. The City first argues that the general verdict itself is against the manifest weight of the evidence. In *Quagliano v. Johnson,* 100 Ill.App.2d 444, the plaintiff argued that the verdict was against the manifest weight of the evidence. However, the court held that absent some objection or challenge in the trial court to the jury's special interrogatory findings, the answers to the interrogatories were conclusive of the issues in the case and the question of whether or not the verdict was against the manifest weight of the evidence was not before the reviewing court. See also *Biggerstaff v. New York C. & St. Louis R.R. Co.,* 13 Ill.App. 2d 85, 89-89.

In the instant case the City did not move to strike the answers to the special interrogatories; nor claim that they were against the manifest weight of the evidence; nor make specific mention of them in its posttrial motion. Therefore, the City's contention that the verdict of the jury is against the manifest weight of the evidence is not before us.

■■ The City also argues that a new trial should have been granted since plaintiff's counsel made prejudicial comments to the jury during closing argument. The City claims that plaintiff's attorney disclosed to the jury the significance and effect of the special interrogatories during his closing rebuttal argument. The City cites *Sommese v. Maling Bros., Inc.,* 36 Ill.2d 263, in support of its argument. In *Sommese* the defendant argued that prejudicial error was committed by plaintiff's attorney during closing argument in explaining the significance and effect of a special interrogatory concerning plaintiff's contributory negligence. In the final argument plaintiff's attorney, without objection, informed the jury that the special interrogatory had been "slipped in" by defendant; that the

answer of the jury to the special interrogatory superseded the general verdict; and that the jury should harmonize its answer to the interrogatory with verdict. The court held that this argument improperly informed the jury of the source of the interrogatory; defeated the purpose of the special interrogatory by advising the jury to conform its answer to its verdict so as to protect the verdict without regard to the evidence; and was so seriously prejudicial as to prevent defendant from receiving a fair trial.

In the instant case plaintiff's counsel did not identify the source of the special interrogatories nor did he tell the jury that the special interrogatories superseded the general verdict. Essentially his argument consisted of an agreement with the prior arguments of defense counsel to the effect that there were four points to be considered, all of which would have to be decided in favor of plaintiff if he were to recover: freedom from contributory negligence on the part of plaintiff, negligence on the part of the City, proximate cause, and damages. (We note that plaintiff's attorney did not even refer to the terms "special interrogatories" or "special verdicts" in his closing argument.) Therefore we find that the closing rebuttal remarks of plaintiff's counsel were not improper, nor were his remarks, made without objection by the City's attorney, so prejudicial as to deprive the City of a fair trial.

The City also contends that it was entitled to a new trial because the trial court erred in admitting the testimony of Dr. Levine concerning plaintiff's cancerous condition discovered in May 1967, five years after the accident of April 1962. Dr. Levine testified as follows:

He is a physician who specializes in diseases of the chest. He examined plaintiff on October 1, 1967. He examined the X-rays taken of plaintiff in April 1962 as well as those taken in May 1967. Based upon an assumption that a bronchoscopy was performed on May 29, 1967, and a specimen taken from the right hilum which the laboratory reported as poorly differentiated squamous carcinoma, together with the X-ray findings, he made a diagnosis of bronchogenic carcinoma at the hilum of the lung.

Based upon plaintiff's electrocardiograms and pulmonary function studies, it was his opinion that surgical removal of the carcinoma was medically impossible. In his opinion the chest injury to plaintiff in April 1962 prevented surgical removal of the carcinoma. He also believed that the injury shortened plaintiff's life expectancy.

After being presented with a lengthy hypothetical question restating the facts in evidence, he was asked if he could state with certainty whether the trauma of April 6, 1962, caused the carcinoma in plaintiff's right lung. He answered that he could not; that the causes of cancer are not known

but there is some information as to what may influence the development of cancer.

When asked if he could state with a reasonable probability as to whether the trauma of April 6, 1962, influenced the course of the carcinoma as observed in 1967, he stated that it was probable that the injury influenced the course of the carcinoma. When asked how it was probable he stated that in many patients, particularly smokers, it is possible to find cells in the lining of the bronchi which are called pre-cancer cells. These are neither normal nor cancer cells. They show characteristics of leaning toward being a cancer cell but cannot be classified as such. There are a much larger percentage of pre-cancer cells in smokers than in non-smokers. (There was evidence that plaintiff had been a heavy smoker for 25 years.) What causes a pre-cancer cell to change and become a cancer cell is not known, but inflammation over a long period of time, irritation or trauma may change a pre-cancer cell into a cancer cell.

He believed that there is the probability that the injury to the lower lobe of plaintiff's bronchus may have played some part in the development of his later cancer.

On cross and recross examination he stated that he did not say that plaintiff's cancer was caused by the accident. He said that he did not know the cause of cancer and therefore had no opinion as to the cause of plaintiff's cancer. Almost 100% of squamous cell carcinoma occurs in smokers, and that smoking a pack of cigarettes every day for thirty years is a consistent repeated trauma to the bronchus, bronchial tree, lungs and entire pulmonary system. Approximately seven percent of all heavy smokers develop squamous cell cancer.

When asked if the injury sustained as a result of plaintiff's accident was the primary and principal agent responsible for the carcinoma, he stated that "we do not know any agent that is primarily the cause of cancer."

Plaintiff, however, argues (1) that the City's objection to Dr. Levine's testimony concerning cancer was not specific and cannot now be argued on appeal and (2) that the City's post-trial motion made no specific objection with respect to Dr. Levine's testimony except to reiterate the reasons offered at the time of trial.

■■ The City objected to the admission of Dr. Levine's testimony based upon the fact that there was no evidence proffered showing a causal connection between the trauma suffered by plaintiff in 1962 and the carcinoma discovered in May 1967. We believe that the City's objection to Dr. Levine's testimony was sufficiently specific and that the City has not waived the right to argue this point on appeal.

■■ Furthermore, we also believe that the City's post trial motion spe-

cifically particularized its objection to Dr. Levine's testimony affording the trial court an opportunity to correct the alleged error. (*Tabor v. Tazewell Service Co.*, 18 Ill.App.2d 593.) See also 3A Nichols, Illinois Civil Practice, ch. 76, § 3841, (1961, Supp. 1970).

The City argues that the trial court improperly admitted the testimony of Dr. Levine which it claims was proffered to establish a causal connection between the poorly differentiated squamous carcinoma located in plaintiff's right intermediate bronchus discovered in May 1967 and the injury to plaintiff occurring on April 6, 1962.

Plaintiff, however, states in his brief that at trial he "had not contended that the trauma of April 6, 1962, was the cause of cancer but, rather that the trauma and its *sequellae, i.e.,* the chronic inflammation and irritation of the bronchi and lungs aggravated or precipitated the carcinoma." Plaintiff claims that from his testimony and that of Dr. Levine the jury could conclude that as a heavy smoker for 25 years prior to the accident, the cellular structure in his lungs had changed from columnar normal to squamous cells and that irritation in the lungs resulting from the injuries suffered in the accident then caused the squamous cells to become squamous carcinoma cells.

The City argues that the conclusion that there is a causal connection between the injury suffered by plaintiff and the squamous carcinoma is dependent upon (1) that plaintiff's heavy smoking caused the normal columnar cells to become squamous; (2) that the injury to plaintiff produced a source of irritation; (3) that irritation can cause squamous cells to develop into squamous carcinoma cells; and (4) that irritation resulting from injuries suffered by plaintiff caused the squamous cells to develop into squamous carcinoma cells. The City concludes that "where each opinion is based upon a prior opinion, predicated upon possibilities and probabilities, the end result is an opinion speculative in nature which cannot stand as evidence of a causal relationship."

The first opinion necessary to prove the causal relationship was that plaintiff's heavy smoking for approximately 25 years prior to the accident caused his normal columnar cells to become squamous cells. Dr. Levine testified that:

"In many patients, particularly smokers, and people with chronic inflammation of the lungs and the bronchial tree, it is possible, on examination, to find cells in the lining of the bronchi which are called by the pathologists pre-cancer cells.

These are neither normal or cancer cells. They show characteristics of leaning towards being a cancer cell, but cannot be classified as such.

Studies show that in smokers there are a much larger percentage of these so-called pre-cancer cells than in non-smokers."

There was no evidence proffered to establish that plaintiff had pre-cancer cells in his bronchi. Dr. George Gertz who treated plaintiff in April 1962 after the accident diagnosed plaintiff's condition as severe contusions of the chest, comminuted multiple fractures of the right ribs and billateral laceration of the lungs, pneumothorax and hemothorax on the right caused as a result of inflammation from the injury. While "many patients," particularly smokers, may have pre-cancer cells, not all patients or smokers do. Whether such cells were present in plaintiff's bronchi was an assumption, not a fact proven by Dr. Levine's testimony or otherwise.

Dr. Levine also testified that the X-rays taken of plaintiff's injury showed a very severe inflammation of the lung. While Dr. Levine stated that he did not know what caused precancer cells to become cancerous, he did say that "it is believed that inflammation over a long period of time, irritation, or trauma, may change a pre-cancer cell into a cancer cell." However, Dr. Levine did not testify that the irritation or trauma from plaintiff's injury in 1962 caused the squamous cells to become cancerous, though he did state, "I believe there is a probability that the injury to the lower lobe bronchus may have played some part in the development of the cancer at a later time."

Even assuming that Dr. Levine's testimony is sufficient to establish that a trauma or irritation to the bronchi may cause squamous cells to develop into squamous carcinoma cells, the witness' testimony still does not prove a causal relationship between the trauma from plaintiff's injury and the carcinoma in regards to other sources of trauma or irritation. Dr. Levine testified that if a person smoked a pack and a half of cigarettes every day for over 30 years this would be a consistent, repeated trauma to the bronchus, bronchial tree and the entire pulmonary system. Upon further questioning Dr. Levine stated:

"Q. And of all heavy smokers, what percentage of those develop squamous cell cancer?

A. Approximately seven percent.

Q. So, something happens to cause cancer in that seven percent?

A. Yes, the consensus is that some changes have to occur so that the bronchial tree acts differently in seven percent than it does in the ninety-three percent.

Plaintiff proffered no proof to show that he was or was not within this seven percent class.

In *Kanne v. Metropolitan Life Ins. Co.*, 310 Ill.App. 524, a doctor testified that death might have resulted from chronic myocarditis. There was no evidence that the deceased had ever suffered from any illness or infirmity of this kind. The court held that the expert's opinion was based on guess, surmise and conjecture which is never regarded as proof of a

fact, and a jury will not be allowed to base a verdict thereon.

In *Wallace v. Yudelson,* 244 Ill.App. 320, a doctor's opinion was based on an assumption that a growth had been present at an earlier time. There was no evidence to support this assumption. The court found that the opinion was so highly speculative that it was not proper or competent for jury consideration.

In *Gariti v. Karlin,* 127 Ill.App.2d 166, 172, the court stated:

"In the case at bar, the medical witness for the defense made several assumptions on which he based his opinion. The most important and most unwarranted of these were that Sullivan was a diabetic, and that it was Sullivan whose car swerved across the center line before the collision. There was evidence that Sullivan was given insulin for a diabetic condition after the accident. There was no evidence showing that Sullivan was a diabetic before the accident, or if he was, as to the extent of his condition. There was absolutely no evidence in the record on which any expert could properly express an opinion that Sullivan was suffering to such an extent from the possible consequences and effects of an unrecognized and undiagnosed diabetic condition that he could have become uncoordinated and allowed his automobile to go onto the wrong side of the highway at the time of the accident.

❋    ❋    ❋

In the instant case there was, however, no evidentiary basis at all for the assumptions made by the doctor. His testimony was highly speculative and it was not proper or competent to be considered by the jury. Mere surmise, guess or conjecture by an expert witness is never regarded as proof of a fact, and a jury will not be allowed to base a verdict thereon. Wallace v. Yudelson, 244 Ill.App. 320, 329."

■■ We believe that the testimony of Dr. Levine, as it relates to the probable development of cancer due to the injury occurring in 1962, is is speculative and is based upon conjecture and surmise. Dr. Levine's testimony not only fails to establish a causal relationship between the injury suffered by plaintiff in April 1962 and the discovery of the carcinoma in May 1967, but also fails to prove that any irritation resulting from the trauma of the accident aggravated a pre-existing pre-cancerous condition which later caused the carcinoma. Therefore, we find that Dr. Levine's cancer testimony as it relates to the development of cancer was improper, incompetent and prejudicial and should have been stricken.

■■ Since we have heretofore found that the City is bound by the special findings of the jury on the question of liability, the judgment will be reversed as to damages only and the cause remanded for a new trial as

to this issue.* See *Paul Harris Furniture Co. v. Morse,* 10 Ill.2d 28; *Mineiko v. Rizzuto,* 65 Ill.App.2d 35; and *Danzico v. Kelly,* 112 Ill.App.2d 14.

The City next contends that (1) the trial court erroneously admitted into evidence hospital bills and other evidence of expenses for the treatment of plaintiff's cancer and (2) the trial court erred in giving plaintiff's jury instructions 26 and 27 based upon the aggravation of a pre-existing condition as an element of damages. In view of the reasons for our decision we consider it unnecessary to comment further on these contentions.

The judgment as to liability is affirmed; the judgment as to damages is reversed and the cause remanded for a new trial on that issue only.

*Affirmed in part and reversed and remanded in part for a new trial.*

ENGLISH, P. J., and LORENZ, J., concur.

---

\* Needless to say, at a new trial neither party would be limited to the medical evidence introduced at the original trial.