ROGER J. O'BRIEN, Plaintiff-Appellant, *v.* STEPHEN WALKER *et al.*, Defendants-Appellees.

First District (5th Division)    No. 63169

Opinion filed June 3, 1977.

---

943

James G. Head, of Chicago (Sidney Z. Karasik and Michael A. Kreloff, of counsel), for appellant.

Beverly, Pause, Duffy & O'Malley, of Chicago (Frank J. Pause, John J. O'Malley, Dom J. Rizzi, and Michael W. Rathsack, of counsel), for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff brought this action to recover damages for personal injuries sustained in the collision of the automobile he was driving and a tractor-trailer unit driven by defendant, Stephen Walker, who was hauling freight for defendant, Distributors Service Company. The jury returned a verdict in favor of defendants and by special interrogatory found plaintiff guilty of contributory negligence. Plaintiff appeals from the judgment entered on the verdict and presents the following issues for review: (1) whether he was denied a fair trial by the trial court's refusal to order the production of a party defendant at trial; and (2) whether certain evidentiary rulings of the trial court were prejudicial error.

The record discloses that plaintiff obtained an order for the discovery deposition of Walker, who was then a California resident, to be taken before the trial of the case—which was then set for May 15, 1975. The case, however, was continued to June 16 "above the black line"—a designation in the trial court for cases awaiting trial which are called daily until assigned to a judge for trial. On June 23, while the case was still "above the black line," plaintiff served a Rule 237(b) notice (Ill. Rev. Stat. 1975, ch. 110A, par. 237(b)), requiring Walker's appearance at trial so that he could be cross-examined. Walker than came to Chicago on June 24 for the trial and for his discovery deposition, which was taken by plaintiff on June 25. On June 26, the case was assigned to a judge for trial; but, through no fault of any party, it was returned to the assignment judge where—because no trial judge was available—it was continued to July 2.

On June 27, Walker's evidence deposition was taken by agreement of the parties, following which he returned to California. However, plaintiff states that at this deposition his attorney served Walker with a subpoena to appear before Judge Butler on July 2, at 10 a.m. When the case was again assigned to trial on July 7, Walker did not appear. An oral request was then made by plaintiff that Walker be ordered to return to testify which, after a hearing, was denied.

During the trial, plaintiff's attorney put Walker's deposition into evidence and read it to the jury. In it, Walker testified that Pulaski had two northbound lanes and that he was traveling north in the lane next to the center line as he approached Augusta, an east-west street. In the block south of that street, his speed was 15-20 m.p.h. and, when he was 50-100 feet south of Augusta, he observed that the traffic signal was green in his favor, and east and westbound traffic on Augusta was stopped. He said also that the traffic signal did not change before the collision with plaintiff's westbound car, which occurred in the northeast quadrant of the intersection. Plaintiff then testified that he proceeded into the intersection with the green light at a speed of 20-25 m.p.h., but he was unable to

remember anything from the time he entered the intersection until he regained consciousness in a hospital three months later.

Two eyewitnesses gave conflicting testimony. Carl Wassinger, a witness for plaintiff, observed the collision from the front window of his apartment located three doors north of Augusta on Pulaski and testified that Walker's vehicle entered the intersection on the red light at a speed of about 40 m.p.h. However, William Hillard, a witness for defendants, observed the collision from in front of his home located on the southwest corner of the intersection and testified that the tractor-trailer had the green light and that plaintiff's vehicle entered the intersection on the red light at a speed of 40-45 m.p.h.

It was also Walker's testimony that he removed his foot from the accelerator before entering the intersection but could not remember whether he applied the brakes prior or subsequent to seeing plaintiff's car; that his vehicle eventually stopped north of the intersection but he could not remember how far; and that plaintiff's car came to rest north of the intersection facing in a northerly direction with the two right wheels up on the curb.

George Martin, an investigating police officer, testified that after the collision both vehicles were facing north, with the automobile half on the sidewalk and the tractor-trailer about 100 feet north of Augusta. The officer said that Walker told him that he first saw the automobile when it was 10-15 feet away; that he was traveling at 20 m.p.h. at the time of the collision, after which his unit traveled about 30 feet; and that he then pulled it up further to get it out of the way of traffic. Martin also testified that the speed limit for both streets was 30 m.p.h. and that at the scene William Hillard gave him an account of the accident.

OPINION

■■ Defendants initially contend plaintiff is conclusively bound by the special interrogatory finding him guilty of contributory negligence because no motion to vacate was made in the trial court, and he argues that we should affirm the judgment *pro forma*, as no claim of error has been preserved for review. In support thereof, they refer us to *Huff v. Illinois Central R.R. Co.* (1972), 4 Ill. App. 3d 113, 280 N.E.2d 256; *Scott v. Hernon* (1971), 3 Ill. App. 3d 172, 278 N.E.2d 259; *Quagliano v. Johnson* (1968), 100 Ill. App. 2d 444, 241 N.E.2d 187. However, we believe their reliance on those cases is unfounded. Where, as here, the attack on a judgment is based upon trial error, the special interrogatory would not be controlling, as it would if the judgment were attacked as being against the manifest weight of the evidence (see *Blakely v. Johnson* (1976), 37 Ill. App. 3d 112, 116, 345 N.E.2d 814, 816); therefore, we will consider this matter on its merits.

We will first discuss plaintiff's contention that he was deprived of a fair trial by the failure of the trial court to order Walker's presence at trial. He argues that where a party litigant does not comply with a Rule 237(b) notice requesting his personal appearance at trial, a trial court is bound to order compliance and that prejudice results from the fact that a "cold flat transcript" of a deposition must be used in place of the personal appearance of a party. We do not accept this argument. The personal appearance of a party may be sought pursuant to Supreme Court Rule 237(b), which provides in pertinent part:

> "The appearance at the trial of a party * * * may be required by serving the party with a notice designating the person who is required to appear. * * * If the party or person is a nonresident of the county, the court may order any terms and conditions in connection with his appearance at the trial that are just, including payment of his reasonable expenses." (Ill. Rev. Stat. 1975, ch. 110A, par. 237(b).)

The significant question raised is whether this rule is mandatory or directory in character and, if directory, whether prejudice occurred in its application to the case at bar. It appears that the resolution of this question depends upon the intent of the supreme court. (Ill. Rev. Stat. 1975, ch. 110, par. 4, ch. 110A, par. 2, ch. 131, par. 1.01; see also *In re Armour* (1974), 59 Ill. 2d 102, 319 N.E.2d 496.) The decisions indicate that trial courts are given considerable latitude in the application of court rules, and in this regard it has been said that:

> "While rules of court are to be obeyed, 'unswerving obedience' is not demanded where no material harm is done to any litigant. [Citation.] As far back as 1906 we have held, 'Even when the court acts contrary to its rules, this will not be ground for reversal, unless it is apparent that injustice has been done.' [Citation.]" *National Bank of Albany Park v. Newberg* (1972), 7 Ill. App. 3d 859, 865, 289 N.E.2d 197, 201; *Levine v. Pascal* (1968), 94 Ill. App. 2d 43, 59, 236 N.E.2d 425, 432.

The parties have called our attention to two decisions in which noncompliance with Rule 237(b) notices have been reviewed. In *Cox v. Yellow Cab Co.* (1973), 16 Ill. App. 3d 665, 306 N.E.2d 738, *aff'd* (1975), 61 Ill. 2d 416, 337 N.E.2d 15, the trial court refused to order the production of a statement made by defendant's employee which plaintiff had requested in a Rule 237(b) notice. The employee was the sole occurrence witness for the defense, and plaintiff was not supplied with a statement made by him contemporaneously with the event in question. It was clear that the absence of the statement limited the cross-examination of the employee, and it was held that the failure to order its production constituted reversible error. In the other case, *Cohn v. Board of*

*Education* (1970), 118 Ill. App. 2d 453, 254 N.E.2d 803, the trial court quashed a Rule 237(b) notice which sought the production of certain records. In affirming, this court recognized that in matters of discovery, including notices to produce under Rule 237(b), the power vested in the trial court requires "* * * a careful exercise of its discretion in order to balance the needs of seeking the truth against the needless harassment of a party litigant." 118 Ill. App. 2d 453, 457, 254 N.E.2d 803, 805.

■■ In his reply brief, plaintiff also contends that Rule 237(b) requires the trial court to order compliance where the notice seeks the production of a party, and that it is only where the notice requires the production of documents that it is subject to judicial discretion. We do not find this argument persuasive. The rule employs the same linguistic composition in referring both to the production of persons, including the parties, and the production of documents, and we see no reason for implying a divergent standard. Moreover, Rule 237(b) provides, "[u]pon a failure to comply with the notice, the court may enter any order that is just, including any order provided for in Rule 219(c) that may be appropriate." Rule 219(c) provides that in the event of noncompliance with rules or orders relating to discovery or pretrial conference, the court may, on motion, enter such orders as are just, including certain specifically mentioned sanctions. (Ill. Rev. Stat. 1975, ch. 110A, par. 210(c).) As countervailing positions of the parties must be weighed before a "just" order can be entered in response to noncompliance with a Rule 237(b) notice, we believe that compelling the appearance of a party litigant at trial is a matter for the sound discretion of the trial court, rather than being a mandatory requirement.

■■ In the instant case, the trial court was asked to order the presence of a nonresident defendant whose evidence deposition had been taken by agreement of the parties. Such a deposition is taken to perpetuate testimony, and we must assume that in agreeing to its taking, plaintiff had some awareness of the fact that Walker might not return for the trial. In any event, we note plaintiff does not assert that his cross-examination of Walker in this deposition was hampered by the failure of defendants to disclose material information or that it was otherwise limited in any manner. He states simply that he was deprived of a fair trial because the jury was prevented from observing Walker's demeanor and because, if he were present, the jury would have heard his cross-examination without first listening to his direct examination by the defense through the evidence deposition. To support this argument, he has called our attention to several legal sources extolling the advantages of personal rather than depositional testimony and, specifically, of calling defendant for a section 60 cross-examination. While we agree in principle with the virtues of such a practice, the rule remains that the party asserting error

must demonstrate prejudice (*Welsh v. Jakstas* (1948), 401 Ill. 288, 82 N.E.2d 53; *Atz v. Goss* (1974), 21 Ill. App. 3d 878, 316 N.E.2d 29), and it will not be assumed by a court of review (*Harrison v. Rapach* (1971), 132 Ill. App. 2d 915, 271 N.E.2d 399).

■■ Here, Walker's evidence deposition was taken at a time when the commencement of trial, although imminent, was uncertain. It had originally been set for trial on May 15 and then continued to June 16 "above the black line"—meaning that it was being held for assignment to trial. Walker then came to Chicago on June 24 for the trial and for his discovery deposition, which was taken on June 25. The case was then assigned to trial on June 26 but was returned to the assignment court, which continued it to July 2. During the taking of his evidence deposition, Walker announced that he would return to California, but no action was taken by plaintiff to obtain a court order to require either that he remain or return on a specific date. In the light of the totality of the circumstances here, and considering that Rule 212(b)(2) allowed plaintiff to use the evidence deposition for any purpose, we cannot say that the trial court abused its discretion by refusing to order the appearance of Walker as a sanction for noncompliance with the Rule 237(b) notice.

● 5    Plaintiff urges a second ground in support of his contention that Walker's appearance at trial should have been ordered. He alleges that his attorney served Walker with a subpoena requiring his appearance at trial. The subpoena, however, was not made a part of the record, and a reviewing court will not consider the question of whether error was committed in the trial court unless the oral or documentary evidence relied upon appears in the record. (*Schmitt v. Chicago Transit Authority* (1962), 34 Ill. App. 2d 67, 179 N.E.2d 838; *Ragen v. Bennigsen* (1956), 10 Ill. App. 2d 356, 135 N.E.2d 128.) Moreover, even were we to hold that the reproduced subpoena appearing in defendants' brief was sufficient to permit our review of the matter, we note that it calls for the appearance of Walker before Judge Butler, the assignment judge, on July 2, 1975, when in fact the case proceeded to trial before Judge Crowley on July 7. The record does not disclose whether Walker in fact appeared on July 2, nor is there anything which would indicate at that time when the case would proceed to trial. We note also that no motion was made on July 2 for the entry of an appropriate order to insure the presence of Walker at a later date. We believe that where a trial subpoena is prepared and served as provided by law for a court appearance on a particular date, and the case does not proceed to trial on that day, it is incumbent on the party desiring the presence of the witness to move for the entry of an appropriate order, either to direct the witness to return at a later date or to continue the subpoena in effect on some reasonable basis. Such action is particularly necessary under the procedures of the trial court here, where

cases are held for trial by the assignment judge so that the trial judge and date of trial may not be known until the date it is assigned to trial. In any event, under the circumstances here, which include the fact that an evidence deposition of the witness was available, we see no abuse of discretion because the trial court refused to order the presence at trial of the subpoenaed witness.

■■ Plaintiff next contends he was prejudiced by certain evidentiary rulings. First, he maintains that inconsistent orders were entered concerning testimony as to speed of the vehicles. Speed is generally recognized as a subject about which a layman may express an opinion. (*Ryan v. McEvoy* (1974), 20 Ill. App. 3d 562, 315 N.E.2d 38.) A witness is competent to testify as to the rate of speed of a moving object if he is of ordinary intelligence and possessed an opportunity for observation. (*Conway v. Tamborini* (1966), 68 Ill. App. 2d 190, 215 N.E.2d 303.) The duration of a witness's period of observation (*Fuhry v. Chicago City Ry. Co.* (1909), 239 Ill. 548, 88 N.E. 221) or the fact that the witness does not drive but only observes as a bystander (*Wright v. Callaghan* (1964), 50 Ill. App. 2d 157, 200 N.E.2d 56) goes to the weight rather than the admissibility of the evidence.

■■ Plaintiff urges that the trial court ruled inconsistently when it sustained an objection to Hobbe's estimate of speed but overruled his objection to such an estimate by Hillard. Hobbe testified that she was sitting in the middle of the Wassinger front room when she heard her father shout and that, thereafter, she heard a crash. Within a minute, she traversed the room to the window facing east onto Pulaski and observed a tractor-trailer "go by" and stop 165 feet north of the intersection. She was then questioned concerning her familiarity with the operation of motor vehicles. It was at this point that the trial court sustained an objection to a question seeking her estimation as to the speed of the tractor-trailer. While we think that she should have been permitted to give her estimate as to speed, we believe the issue has not been properly preserved for review where no offer of proof was made as to what her testimony as to rate of speed would be. (See *Hession v. Liberty Asphalt Products, Inc.* (1968), 93 Ill. App. 2d 65, 235 N.E.2d 17.) Plaintiff argues, however, that the substance of Hobbe's testimony was before the trial court, obviating a need for an offer of proof (*Schusler v. Fletcher* (1966), 74 Ill. App. 2d 249, 219 N.E.2d 588) and that *Hession* is distinguishable as it involved the testimony of a nonoccurrence witness. We cannot agree. *Hession* is on all fours with the case at bar, as Hobbe's testimony established that she was a postoccurrence witness. In *Hession*, as here, the testimony was excluded due to a lack of foundation and, without an offer of proof, a reviewing court would have to speculate regarding the witnesses' unvoiced opinions. Although the court was aware that she would testify as to speed,

there is nothing to indicate the estimated rate of speed she would have testified to and, without this information, we cannot determine whether the failure to allow her testimony as to speed was prejudicial to plaintiff.

■■ Further, we note that when Hillard was asked whether he could estimate the speed of the vehicles, plaintiff's objection was that there was "no foundation at all for that." This objection was properly overruled, for although he was not questioned as to his familiarity with the operation of motor vehicles, we do not find this to be a requirement where he obviously was at least of ordinary intelligence and had the opportunity to observe. *Conway; Wright.*

Secondly, plaintiff suggests that error occurred when a defense objection was sustained regarding Hobbe's testimony that prior to hearing the sound of impact, she heard her father exclaim, "Look out, Look out!" He argues that this statement was a spontaneous declaration and by its exclusion he was deprived of corroborative evidence that Wassinger had observed the event in question prior to the sound of collision.

■■ A spontaneous declaration or excited utterance is admissible as an exception to the hearsay rule. (*Perkins v. Chicago Transit Authority* (1965), 60 Ill. App. 2d 431, 208 N.E.2d 867.)

> "Three factors are necessary to bring a statement within this exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. [Citations.]" (*People v. Poland* (1961), 22 Ill. 2d 175, 181, 174 N.E.2d 804, 807.)

A collision of motor vehicles has been viewed as a startling event (*Perkins*), and in *Poland* it was held that the occurrence of the event need not be proved by direct evidence as "it is sufficient if it appears inferentially that the declarant personally observed such matters and that there is nothing to make a contrary inference more probable." 22 Ill. 2d 175, 183, 174 N.E.2d 804, 808.

■■ Hobbe testified to being in the front room of the Wassinger apartment on April 3, 1970. There, she observed her father sitting in a rocker next to a window which faced east onto Pulaski, with the rocker so angled that it faced in a southeasterly direction. She stated that she had occasion to sit in the rocker while it was similarly positioned, and she could see the intersection of Augusta and Pulaski. On the date in question, she first heard her father's exclamation and then the crash. The trial court sustained an objection to what her father had said, but there was no motion to strike it from the record. We are satisfied that the criteria for the

admission of the statement had been established; however, we find no prejudice in its exclusion. As plaintiff himself points out:

> "Wassinger's exclamation * * * would have been probative of his credibility that he had seen the split-second events immediately before, during and after the occurrence. It is the making of the exclamation which is critical here, not its content."

Hobbe's testimony that an exclamation had been uttered prior in time to the sound of the crash was in evidence, and plaintiff repeatedly brought the matter of timing to the jury's attention during his subsequent examination of the witness. Consequently, in view of the above statement of plaintiff that the words themselves were of no value to him, and since the jury was fully apprised of Wassinger's agitation prior to the time of impact, we can find no reversible error in the exclusion of Hobbe's statement.

Finally, plaintiff enumerates six instances in which he contends that he was arbitrarily frustrated by rulings concerning attempted impeachment of William Hillard. Matters of impeachment are within sound discretion of the trial court. (*Wenzell v. MTD Products, Inc.* (1975), 32 Ill. App. 3d 279, 336 N.E.2d 125.) For the reasons set out below, we believe that the trial court did not abuse its discretion.

■■ First, Hillard testified he was standing in front of his home when he observed the collision. He denied that he had just crossed the street with four friends, and plaintiff sought to impeach him with a statement given at a discovery deposition that he had just crossed the street. An objection was sustained, which plaintiff contends was erroneous. We disagree. A witness may be cross-examined as to prior statements which are repugnant or inconsistent with his testimony at trial and which relate to material and not collateral or irrelevant matter. (*Sommese v. Maling Brothers* (1966), 36 Ill. 2d 263, 222 N.E.2d 468; *People v. Hayes* (1975), 32 Ill. App. 3d 953, 337 N.E.2d 280; *Goldstein v. Hertz Corp.* (1973), 16 Ill. App. 3d 89, 305 N.E.2d 617; *McCormick, Evidence* §34, at 67 (2d ed. 1972).) The statement and Hillard's testimony were consistent in that each placed him in front of his house while he observed the occurrence, and whether or not he had previously crossed the street is patently immaterial.

■■ Second, although the event occurred on April 3, 1970, and Hillard, Walker and Martin all testified that Hillard was in Chicago on that date, plaintiff sought to impeach Hillard's statement regarding the date in 1973 on which he moved to Tennessee. We believe the trial court properly foreclosed this attempt, as there is nothing in the record to indicate any materiality to the 1973 date.

■■ Third, Hillard was shown a photograph and asked whether it

refreshed his recollection regarding how far north of the intersection the automobile had come to rest after the impact. Hillard replied, "I don't remember" and plaintiff read a question and answer from his discovery deposition to the effect that he estimated that distance to be 4½ feet. An objection was sustained, which plaintiff claims was erroneous. The record does not contain the photograph, so that we are unable to determine whether 4½ feet would have been a consistent or inconsistent statement. Unless the evidence in question is made part of the record, a reviewing court will not consider whether the trial court committed error with respect to it. *Schmitt; Ragen.*

■■ Fourth, when Hillard remembered making and signing a statement at his home on May 6, 1970, plaintiff moved for its production. Defendants asserted that they produced all documents in their possession, and plaintiff contends that the court erroneously failed to require its production and, by so doing, precluded his inquiry into Hillard's credibility. We see no merit in this contention, because the record does not disclose that defendants possessed the statement and in view of the fact that a witness called later by plaintiff testified that he was an attorney who had represented plaintiff in the case at bar for four years and that he had been in possession of a statement from Hillard taken at his home on May 6, 1970.

■■ Fifth, plaintiff contends that the trial court arbitrarily precluded his questioning as to a prior inconsistent statement in which Hillard is alleged to have stated that he did not see the occurrence. Plaintiff had asked Hillard whether a man had been to his home to serve a subpoena which he did not accept, and an objection to the question was sustained. Evidence must be material to be admissible (*LeMaster v. Burns* (1971), 130 Ill. App. 2d 918, 266 N.E.2d 114; 18 Ill. L. & Prac. *Evidence* §43 (1956).) Instead of establishing that the subpoena was in some way connected with the instant case, plaintiff embarked upon a series of questions, to which objections were sustained, concerning the contents of the conversation Hillard allegedly had with the subpoena server—to whom plaintiff constantly referred to as "that man." Conversations which are shown to be material and relevant are competent if the parties to the conversation are identified either by direct evidence or by surrounding facts and circumstances. (See *People v. Powloski* (1924), 311 Ill. 284, 142 N.E. 551.) Here, however, Hillard neither admitted nor denied a conversation with the process server, nor did plaintiff identify him other than to refer to him as "that man." Under these circumstances, the court properly sustained the objections to questions concerning the contents of the conversation. Moreover, it should be noted that later during the trial, the substance of and the circumstances surrounding the alleged

conversation were testified to by the process server, Francisco Lopez. Therefore, even assuming that the questions had some connection with the case at bar, prejudice is not indicated because the excluded matter was fully established by other evidence. See *Saviola v. Sears, Roebuck & Co.* (1967), 88 Ill. App. 2d 13, 232 N.E.2d 4.

■■ Sixth, plaintiff attempted to show Hillard a letter which he purportedly wrote, indicating he had not seen the accident. When defendant objected, a conference in chambers was had—during which the court told plaintiff that if he could show that the contents of the letter referred to the accident in question, he would allow the questioning. However, before plaintiff could proceed to make this showing, Hillard stated that the signature it bore was not his. Defendant moved to strike all reference to the exhibit, but the court stated it would allow plaintiff to proceed. Plaintiff's attorney then informed the court that it might as well rule on the motion, and the court then struck all reference to the exhibit. Where a foundation has been laid when a witness denies that a prior statement was his, it is incumbent upon the party laying such a foundation to offer proof to the contrary. (*Goldstein.*) In the instant case, plaintiff made no such offer. The record discloses that plaintiff was not prevented by the court from making such proof and, in fact, the court stated he could proceed to do so, but instead, plaintiff asked the court to rule on the motion. Under such circumstances, it appears that the trial court was requiring no more than an adherence to the rule stated above, and we see no error in its action.

For the foregoing reasons, the judgment is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.