## ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY
## v.
## SILAS D. PARSONS.

*Railroads—Negligence—Injury to Stock—Crossings—View of Track—Obstruction to—Private Crossing—Evidence—Instructions.*

1. The fact that persons, for their own convenience, use a farm crossing in going to, or returning from, a certain place with the passive acquiescence of a railroad company, does not make the crossing a public one, or create any new duty on the part of the railroad company.

2. In such case the company must use ordinary care to avoid injuring a person using such crossing, or property in his charge, and it can only be held liable in case the injury is wilful or wanton.

3. A mere naked license or permission to enter or pass over an estate,

will not create a duty or impose an obligation on the part of the owner to provide against the danger of accident.

4. An instruction setting forth in substance that if the company, with knowledge of the use, did not prevent it or protest against it, then the farm crossing became public, with all the duties, burdens and obligations thereby created, should not be given.

5. Or one requiring a company to use every effort to avoid injury.

6. There is no rule of law that declares it to be negligence to permit the dirt taken from a cut in the construction of a railroad to be thrown up on the right of way, although it might obstruct the view, or weeds to grow with like effect. regardless of the point of crossing and the right to cross, or any duty to the person about to cross the track.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of Henderson County; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. RAUS COÖPER and WILLIAMS, HOLT & WHEELER, for appellant.

Messrs. KIRKPATRICK & ALEXANDER and J. H. HANLEY, for appellee.

CARTWRIGHT, J.    Appellee sued appellant for damages from killing a horse and injuring a wagon and harness. The suit was commenced before a justice of the peace, and on appeal to the Circuit Court there was a verdict and judgment for appellee for $119. William Gillespie was driving a team of which appellee owned one horse and the wagon and harness, and was attempting to cross the track of appellant when the team was struck by an engine of appellant. There were no written pleadings, but the only negligence charged against appellant upon the trial or in this court consists in having allowed a bank of dirt, with weeds growing thereon, on its right of way, to remain along a cut near the crossing of the track where the accident occurred, so as to obstruct the view of trains by one approaching the crossing. The crossing in question was located half a mile west of Stronghurst station. Appellant began to run trains there April 29, 1888, and the

accident occurred August 24th of the same year. The cross-ing was put in by appellant in the construction of its road as a farm crossing. There were gates on both sides of the track; the planks were put in as is usual in farm crossings, and there can be no doubt that it was so intended. Appellee claimed that the character of the crossing had been changed by pub-lic use with appellant's consent so that it had become at the time of the accident a public highway crossing, and that, in consequence of such changed character, appellant owed a duty to all persons to keep the view unobstructed so that they might cross with safety. For the purpose of showing that the crossing had become public, appellee introduced evidence that, during the summer of 1888, the route from the west by way of this crossing to the town was shorter than others, as streets of the town had not been opened from the north through a hedge that was there at that time; that the gate on the north of the track was left open, and that various persons coming from the west passed through the open gate over this cross-ing and went to Stronghurst between the track and the south fence. To such use of the crossing it does not appear that appellant objected. This evidence was not sufficient to estab-lish a change in the nature of the crossing. Trains had only been running about four months, and the condition of the town in respect to unopened streets was evidently a temporary one, and the fact that persons for their own convenience used this route in going to or returning from the town, with the passive acquiescence of appellant, did not make the crossing a public one, or create any new duty on the part of appellant. A mere naked license or permission to enter or pass over an estate, will not create a duty or impose an obligation on the part of the owner to provide against the danger of accident. I. C. R. R. Co. v. Godfrey, 71 Ill. 500; I. C. R. R. Co. v. Hetherington, 83 Ill. 510.

Gillespie, who was driving the team at the time of the accident, was not using the crossing under any right of an adjoining proprietor of land. He had been to an ice house northwest of the crossing .with a butcher wagon, and was returning to town. Appellant owed him no duty to remove

the bank of earth east of the crossing, or to cut the weeds so as to afford him a better view of the appellant's premises or trains.

The only duty of appellant was to observe ordinary care when he was found to be in a place of danger to avoid injuring him, or the property in his charge, and it could only be held liable in case the injury was wilful or wanton. Blanchard v. L. S. & M. S. Ry. Co., 126 Ill. 416; I. C. R. R. Co. v. Godfrey, *supra*.

It is not claimed that appellant did not fill the measure of its duty according to this rule. The first instruction given for appellee was as follows: "Although the jury may find from the evidence that the crossing in controversy, where the accident occurred, was originally built as and for a private crossing, yet if they further find that such crossing was afterward and prior and up to the time of the accident, with the knowledge and consent of the defendant railroad company, used as and for a public way, by all those who chose to pass and repass that way, then the jury are instructed that the defendant is estopped to deny that the crossing was, to all intents and purposes, a public crossing in so far as the questions involved in this case." This instruction did not require general, frequent or continuous use by the public, nor any such manifestation of consent as would make the crossing public. Mere knowledge and passive acquiescence are not sufficient. There was no evidence of any such consent as could make the crossing a public one. In the light of the evidence it was equivalent to telling the jury that if appellant, with knowledge of the use, did not prevent it or protest against it, then the farm crossing became public, with all the duties, burdens and obligations thereby created. This was error. The second instruction for appellee was as follows: "The jury are instructed that the rights of a railroad company and those of the public as to the use of a highway are mutual and reciprocal; and in the exercise of such rights both the company and those using the way must have due regard for the safety of others, and use every effort to avoid injury to others." The jury, of course, understood this instruction as referring to this crossing, inso-

Nat. Accident Society of City of New York v. Taylor.

much as the case being tried concerned no other, and the instruction assumed that this was a public crossing, and that the relative rights and duties were such as the law created at the intersection of a highway. It was also bad in requiring the appellant to use every effort to avoid injury. The rule is not so stringent. Appellee's third instruction informed the jury that it was negligence in a railroad company to permit dirt to be thrown up or weeds to grow on its right of way, so as to materially obstruct the view, by persons about to cross the track.

There is no rule of law that declares it to be negligence to permit the dirt taken from a cut in the construction of a railroad to be thrown up on the right of way, although it might obstruct the view, or weeds to grow with like effect, regardless of the point of crossing, the right to cross, or any duty owing to the person about to cross the track. As applied to this case there was no such rule, if it could be said to be a rule of law in any case. The instruction then proceeded, that if there was an obstruction of view by dirt and weeds, on the right of way, without which the injury would not have happened, the company would be liable in this case, unless the jury believed that Gillespie's negligence directly contributed to the injury. This was not correct. It assumed Gillespie's right to cross, and gave him protection which the law did not afford him. The evidence shows no ground of recovery. The judgment will be reversed.                         *Judgment reversed.*