Marilyn Emge, a Minor, by Ben Emge, Her Father and Next Friend, Appellant, v. Illinois Central Railroad Company, Appellee.

346

Heard in this court at the May term, 1938. Opinion filed November 7, 1938. Rehearing denied December 1, 1938.

BEASLEY & ZULLEY, of East St. Louis, for appellant.

KRAMER, CAMPBELL, COSTELLO & WIECHERT, of East St. Louis, for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

Marilyn Emge, a minor 11 years of age, by her next friend, instituted this suit to recover damages for personal injuries she sustained when the automobile in which she was riding was struck at a private crossing

by one of defendant's trains. A trial to a jury resulted in a verdict for the plaintiff for $2,500. During the trial defendant filed the usual motions for a directed verdict but rulings thereon were reserved. After the verdict was returned the court granted defendant's motion for a judgment notwithstanding the verdict and this appeal followed.

In ruling upon a motion for a judgment *non obstante veredicto* the trial court, and this court on appeal, have no authority to weigh and determine controverted questions of fact. In the consideration of such a motion the court is governed by the same rules applicable to a motion for a directed verdict. *Capelle v. Chicago & N. W. Ry.*, 280 Ill. App. 471; *Illinois Tuberculosis Ass'n v. Springfield Marine Bank*, 282 Ill. App. 14; *Gardiner v. Richardson*, 293 Ill. App. 40; *Farmer v. Alton Bldg. & Loan Ass'n*, 294 Ill. App. 206.

A motion to direct a verdict is in the nature of a demurrer to the evidence. The question presented by such a motion is whether there is evidence to sustain plaintiff's case and in the consideration of such question the plaintiff is entitled to the benefit of all the facts that the evidence tends to prove and all just inferences that can be drawn therefrom, and the evidence most favorable to plaintiff must be taken as true. *Pollard v. Broadway Cent. Hotel Corp.*, 353 Ill. 312; *Libby, McNeill & Libby v. Cook*, 222 Ill. 206; *Blumb v. Getz*, 366 Ill. 273.

The complaint contained three counts, the first of which charged that the defendant had for 15 years prior to the accident, sounded a whistle at this private crossing but that on the date of the accident it negligently failed to give such warning. In the second count it was alleged that immediately west of the crossing there was a sharp curve with an embankment on the north side of the track but within the right-of-way and that defendant permitted weeds, brush and trees to grow on this embankment and that by reason thereof

plaintiff's view of the approaching train was obstructed. The negligence charged in the third count was that defendant had for a period of 15 years given a whistle warning at this crossing but on the date of the accident failed to sound the whistle or ring a bell as required by the statute in reference to warning signals by railroad companies at public crossings. Defendant's answer contained a general denial of each charge of negligence.

The evidence shows that Ben Emge, plaintiff's father, resided with his family, which included plaintiff, on a farm near Belleville. The defendant's right-of-way severed the farm, leaving that part upon which the residence and other farm buildings were located on the north and the remainder to the south side. The means of ingress and egress from the buildings to the land south of the right-of-way and to the public highway was over a private driveway from the residence to the defendant's tracks a distance of approximately 200 feet and thence over defendant's tracks on a private crossing where this accident occurred. The crossing was about 10 feet in length. The greater part of the space between the rails was planked. There was a board on the outside of each rail abutting to the rail thus forming an approach over the rails.

About 8 a. m. the morning of the accident Ben Emge started from his residence in his automobile, to take plaintiff and a 6-year-old son to school. He drove down the driveway to within 8 to 10 feet of the north rail of the tracks where he stopped his automobile, looked in both directions and listened for a train. He testified that no train was in sight and hearing none, he shifted the gear into low and proceeded slowly to cross the tracks; that when the front end of his automobile was on the track he saw the train approaching from the west, which was on his right-hand side, and it was then 50 to 100 feet away. The engine struck the automobile throwing it to the opposite side of the

track from which it approached, a distance of 60 feet from the crossing.

Defendant used this track almost exclusively for one-way traffic and this train was traveling the usual direction and on the regular schedule. It consisted of an engine and 11 cars and was running 45 miles per hour.

West of the crossing, which was the direction from which the train approached, the track curved to the north so that as it proceeded in a northwesterly direction it was nearly west of the Emge residence. On the north side of the track at the curve but within the right-of-way there was an embankment which at places was 10 to 12 feet higher than the level of the track. Weeds, brush and small trees were growing on this embankment to a height of 8 to 10 feet. The engine was about 16 feet, in height, above the rails.

Standing between the rails at the crossing the view was unobstructed for a distance of 600 to 800 feet. Five feet north of the crossing the view was open 400 feet, and 8 to 10 feet north it was reduced to 300 feet. Plaintiff and her father both testified that the automobile was stopped 8 to 10 feet from the north rail and that there was an unobstructed view to the west down the track for 300 feet but beyond that the vision was obstructed by the weeds, brush and trees on the embankment on the inner side of the curve.

At the time of the accident there was a light rain falling. Ben Emge testified he had the window on his left open. The train crew in charge of the train had made the run over this crossing for several years and were well acquainted with conditions at the crossing. Ben Emge had lived in this same residence for 15 years and knew the uses of the track and conditions at the crossing. Plaintiff had known the crossing from her earliest recollections as a child.

There was no statutory duty binding the defendant to give the statutory signals when the train approached

this crossing. It had the common law duty to exercise due care. In *Chicago & A. R. Co. v. Dillon*, 123 Ill. 570, 579 it is said, "Without regard to the statute, it is the duty of those having charge of trains to give notice of their approach at all points of known or reasonably apprehended danger." *Chicago B. & Q. R. Co. v. Perkins*, 125 Ill. 127; *Chicago & A. R. R. Co. v. Sanders*, 154 Ill. 531; *Illinois C. R. R. v. Scheffner*, 106 Ill. App. 344; *Coyne v. Cleveland C. C. & St. L. Ry. Co.*, 208 Ill. App. 425.

Under the foregoing principles the question would be, was this crossing a place of known or reasonably apprehended danger? If it was then defendant had the duty to give warning of its approach and failure to observe that duty constituted negligence.

The obstruction furnished by the weeds, and brush on the embankment at and near the curve reducing the distance of unobstructed view to 300 feet was evidence from which the jury could have found that the crossing was such a place of danger that defendant should have given warning of its approach.

There is a sharp conflict in the evidence as to whether a whistle was blown or bell rung for the crossing. Plaintiff and her father testified positively that none were given while a part of the train crew with equal emphasis testified that both were given. Defendant contends that plaintiff's evidence on this point is negative, that is that she and her witnesses testified that they did not hear the signals. The record discloses that on direct examination of plaintiff and her father the question was asked each of them as to whether a whistle was blown or a bell rung and each of them testify positively that no whistle was blown or bell rung. The credit to be attached to such evidence and the weight of the same were questions for the jury. We are of the view that there is evidence to support the charge of negligence in the second count of the complaint.

On the question of due care the undisputed evidence is that the automobile came to a stop 8 to 10 feet north of the crossing and that plaintiff and her father both looked and listened for a train but that seeing or hearing none the father proceeded to drive across the tracks. On this point defendant contends that since the view was unobstructed for a distance of at least 300 feet west of the crossing, that is in the direction of the approaching train, the plaintiff and her father should have seen the train and that when they testify they did not see it, it is manifest that they did not do that which they testified they did. If the automobile was stopped 8 to 10 feet north of the track and then started over the crossing in low gear and was struck on the crossing when the train was traveling 45 miles per hour it is very probable that at the time plaintiff and her father looked, the train was not within the 300 feet of unobstructed view. Defendant relies upon such cases as *Grubb v. Illinois Terminal Co.*, 366 Ill. 330; *Provenzano v. Illinois Cent. R. Co.*, 357 Ill. 192; *Greenwald v. Baltimore & O. R. Co.*, 332 Ill. 627. The evidence in the *Grubb* case was that 50 feet south of the crossing there was a clear view for a distance of 450 feet and 75 feet south of the crossing a clear view of 175 feet and that at a point of 100 feet south, the view was 112 feet. In the *Provenzano* case the evidence was that for a distance of 25 feet from the track the view was not obstructed for 900 to 1,000 feet. In the *Greenwald* case 30 to 40 feet from the crossing the view was unobstructed for a distance of 200 feet. In *Lewis v. Illinois Terminal Co.*, 276 Ill. App. 610 (Abst.) this court held the plaintiff's intestate was not in the exercise of due care for his own safety at a crossing where he could see an electric car approaching 700 feet down the track when he was 20 to 30 feet from the crossing.

The distance plaintiff was from the track, when the automobile was stopped and she looked and listened,

and the length of the space, where there was an un-
obstructed view towards the approaching train, are
important elements in considering the question of her
due care but in view of the other facts and circum-
stances, surrounding her attempt to pass over the
crossing as heretofore pointed out, we are of the opin-
ion that the question of her due care was one for the
jury.

The court erred in sustaining defendant's motion
for a judgment notwithstanding the verdict.

Plaintiff asks that this court enter judgment on the
verdict while defendant contends that if this court
should deem the trial court's ruling on its motion for
a judgment *non obstante veredicto* erroneous, that the
cause should be reversed and remanded for a new trial.

Defendant urges that the court erred in the refusal
of two of its instructions. Both instructions were in
reference to the due care that was to be exercised by
the plaintiff. The first instruction was properly re-
fused for it did not limit the due care which the plain-
tiff was required to exercise to that which a person
of her age, capacity, intelligence and experience would
be expected to exercise. The substance of the second
refused instruction was covered by other instructions
given at request of defendant.

We conclude that the evidence supports the verdict
and that there was no error committed in the trial
of the case that prejudiced the rights of the defend-
ant. For the reasons stated the judgment of the lower
court is reversed and judgment to be entered in this
court in favor of the plaintiff and against the defend-
ant for the amount of $2,500.

*Judgment reversed and judgment on verdict in this*
*court.*