PAUL L. FRITZSCHE, Special Adm'r of the Estate of Carol Ann Fritzsche, Plaintiff-Appellee, v. UNION PACIFIC RAILROAD COMPANY, Defendant-Appellant (Donald F. Cain, Defendant).

Fifth District   No. 5—97—0323

Opinion filed February 19, 1999.

· Thomas E. Jones, Anthony L. Martin, and Leslie G. Offergeld, all of Walker & Williams, P.C., of Belleville, for appellant.

Rex Carr, of Carr, Korein, Tillery, Kunin, Montroy, Cates & Glass, of East St. Louis, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Union Pacific Railroad Company, appeals from a judgment in favor of plaintiff, Paul L. Fritzsche, special administrator of the estate of Carol Ann Fritzsche, in a wrongful-death action for the death of Paul L. Fritzsche's wife, Carol Fritzsche, killed in an automobile-train collision. The circuit court of Madison County entered judgment on a jury verdict awarding plaintiff $4,300,000 reduced by 25% to $3,225,000 for decedent's contributory negligence.

Defendant has raised numerous issues for consideration. We will not list the many subissues defendant presents, but rather we will discuss these subissues in the text of the opinion. On appeal, defendant makes the following claims: (1) federal law preempts plaintiff's excessive-train-speed claims; (2) no cause of action exists under the Wrongful Death Act (the Act) (740 ILCS 180/0.01 et seq. (West 1994)) for the breach of a warranty deed covenant; (3) the trial court erred in allowing plaintiff's expert to testify concerning previously undisclosed opinions; (4) the trial court erred in excluding defendant's expert's opinions regarding decedent's intoxication; (5) plaintiff's counsel's closing argument comments were inflammatory and resulted in an excessive verdict; (6) defendant has no duty to sound a warning of an approaching train at private crossings; (7) the trial court erred in giving the "missing witness" instruction and plaintiff's non-Illinois Pattern Jury Instruction (IPI) regarding a railroad's duty at an obscured crossing; and (8) the jury's verdict is against the manifest weight of the evidence. We affirm.

# I

On September 1, 1994, at approximately 7 p.m. in clear weather, decedent was driving her Ford Bronco toward her residence, southbound along a private farm road owned by the Fritzsches. A collision occurred at a railroad crossing where defendant's railroad tracks intersect with the farm road.

The train was operated by engineer Donald Cain, who was making his regular run from Villa Grove, Illinois, to St. Louis, Missouri. The train was traveling westward at 60 miles per hour toward the crossing. Cain first saw the Bronco when its front end was coming onto the first rail. At that point the train was 100 to 150 feet from the Bronco. The train struck the Bronco, killing Carol Fritzsche.

A cornfield with fully grown corn was on the left side of the road approaching the crossing. Between the edge of the cornfield and the crossing there were weeds and trees. The farm road intersects the railroad right-of-way at a 55-degree angle. One attempting to cross the tracks would have to turn and look back over his shoulder to see to the left. The grade line of the approach to the crossing is steep, and the surface was covered with loose rock. Decedent frequently used the crossing.

Just prior to the accident, decedent and her brother were at Strotsie's Tavern. According to various witnesses, decedent consumed two to three beers between 6 p.m. and 6:30 p.m. The witnesses drinking with decedent testified that they did not notice any signs of intoxication before decedent left the tavern at 6:30 p.m. It takes between two and four minutes to get from the tavern to the farm crossing. The Madison County coroner's office took a blood sample from decedent at 10:38 p.m. on the day of the accident. The blood sample was sent to the St. Louis County medical examiner's office on September 6, 1994. On September 13, 1994, the toxicology lab issued its report stating that decedent's blood-alcohol content was .291, nearly three times the legal limit. Dr. Christopher Long, who signed the toxicology lab report, testified that decedent would have had to have the equivalent of 12 to 15 beers in her blood system at the time of her death to attain a blood-alcohol content of .291. Dr. Long testified that this level of blood-alcohol content would have significantly impaired decedent's perception and reaction time in operating her vehicle.

On February 25, 1997, plaintiff filed his amended complaint pursuant to the Act. Count I alleged that defendant was negligent in failing to give notice of the approach of the train by ringing a bell, sounding a whistle, or blowing a horn and in failing to reduce the speed of the train. Count II alleged that defendant was contractually bound to

maintain the crossing so as to permit the easy passing of teams (of mules) and to have a grade of less than 8%. Count II alleged that decedent's travel over the crossing was impaired due to defendant's default in maintaining the crossing.

On February 20, 1997, the jury returned a verdict in favor of plaintiff on both counts, awarding plaintiff $4,300,000. The verdict was reduced by 25% to $3,225,000 for decedent's contributory negligence. Defendant's posttrial motions were denied. Defendant appeals.

Due to the many issues defendant raises, additional facts will be presented as needed for the disposition of this matter.

## II

Defendant initially contends that plaintiff's negligence allegations in count I, to the extent that they allege excessive speed, are preempted by federal law. See *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 123 L. Ed. 2d 387, 113 S. Ct. 1732 (1993), *aff'd*, 933 F.2d 1548 (11th Cir. 1991). However, we need not reach this question.

■ In count I of his amended complaint, plaintiff also alleges that defendant failed to give notice of the approach of the train to the crossing, a place of known or reasonably apprehended danger by reason of the grade, obstructions to the view, and the angle of the intersection. These claims were not specifically preempted by the Supreme Court in *Easterwood*. In *Easterwood* the Supreme Court declined to address the question of the preemptive effect of the Federal Railroad Safety Act of 1970 (Safety Act) (45 U.S.C.§§ 421 through 447 (1988 & 1990 Supp. II)) on claims for the breach of related tort law duties, such as the duty to slow or stop a train to avoid a specific, individual hazard, since such claims were not before the court. 507 U.S. at 675 n.15, 123 L. Ed. 2d at 404 n.15, 113 S. Ct. at 1743 n.15. Accordingly, the preemptive effects of the Safety Act do not reach the negligence claims raised here.

In further support of our holding, we rely on the eleventh circuit's holding in *Easterwood*. *Easterwood v. CSX Transportation, Inc.*, 933 F.2d 1548 (11th Cir. 1991). In *Easterwood*, two negligence claims were not before the Supreme Court, namely, CSX's failure to trim vegetation not adjacent to the railbed and CSX's failure to remove a hump in the road which impeded navigation over the tracks. These issues were addressed by the eleventh circuit. The plaintiff alleged that excessive vegetation on the side of the track obstructed the views of both the engineers and decedent, thereby causing the accident. 933 F.2d at 1554. The eleventh circuit found that the claim was partially preempted because federal law (49 C.F.R. § 213.37 (1990)) regulates

vegetation on and immediately adjacent to the railbed. However, the eleventh circuit determined that "the Secretary [of Transportation] has not regulated vegetation which is not immediately adjacent to the railbed." 933 F.2d at 1554. To determine what constitutes the area "immediately adjacent to the roadbed," the eleventh circuit relied upon *Missouri Pacific R.R. Co. v. R.R. Comm'n*, 833 F.2d 570 (5th Cir. 1987). The *Missouri Pacific* court explained:

> "The area 'immediately adjacent to the roadbed' abuts the roadbed. Right-of-way property can and often does extend several yards from the roadbed, however. Consequently, not all right-of-way property lies 'immediately adjacent to the roadbed,' and the federal regulation does not 'cover the subject matter' of vegetation that is on the right-of-way but not immediately next to the roadbed." 833 F.2d at 577.

Adopting the above reasoning, the eleventh circuit in *Easterwood* held, "To the extent that Easterwood is bringing a claim for vegetation near, but not immediately adjacent to, the tracks, this claim is not pre-empted." *Easterwood*, 933 F.2d at 1554.

The plaintiff in *Easterwood* also claimed that there was a steep hump in the road elevating the railroad tracks above the roadway which forced traffic to slow down in order to navigate over the hump, thereby contributing to the accident. 933 F.2d at 1556. The court of appeals, in holding that this claim was not preempted, stated that the defendant did not cite, nor could it find, "any federal statute or regulation regulating the angle of the roadway as it approaches the railroad tracks." 933 F.2d at 1556.

Here, the record indicates that the railroad is responsible for the vegetation. Plaintiff's expert, Richard Weinel, a registered land surveyor and registered engineer, testified that according to the abstract documents and deeds, the railroad right-of-way extends 190 feet on each side of the tracks, thereby encompassing the vegetation-covered land near, but not immediately adjacent to, the railbed. Thus, this area of the right-of-way is not subject to federal regulation and its preemptory powers.

We note that defendant, relying upon *Pearce v. Illinois Central Gulf R.R. Co.*, 89 Ill. App. 3d 22, 411 N.E.2d 102 (1980), maintains that it has no duty, either statutory or common law, to trim the trees and brush in its right-of-way. We disagree with defendant's assertion. *Pearce* is distinguishable from the instant case. In *Pearce*, the plaintiff was injured in an automobile-train collision on his employer's privately owned and maintained road. We held in *Pearce* that the plaintiff "had a mere license to cross defendant's right-of-way." *Pearce*, 89 Ill. App. 3d at 31, 411 N.E.2d at 107. Consequently, the railroad had no duty to

guard against the danger of accident. Unlike in *Pearce*, decedent was using the farm crossing "under [a] right of an adjoining proprietor of land." *Atchison, Topeka & Santa Fe R.R. Co. v. Parsons*, 42 Ill. App. 93, 95 (1891). Further, a contractual relationship exists between decedent and defendant by virtue of the provisions of the 1903 warranty deed. Therefore, *Pearce* is inapposite to this case.

Regarding the crossing, defendant does not cite to any federal regulations controlling the steepness of approaches to farm crossings, the condition of the surface of the approach, or the angle of the roadway intersecting with the railroad tracks.

■ Even if plaintiff's excessive-speed claims were preempted by federal law, plaintiff's remaining negligence claims were not subject to preemption and were properly submitted to the jury. Because the jury returned a general verdict, we do not know on what basis it found for plaintiff. *Gaines v. Townsend*, 244 Ill. App. 3d 569, 575, 613 N.E.2d 796, 801 (1993). As there were proper bases for this general verdict, the verdict stands.

Defendant next contends that the trial court erred in ruling that defendant had, by operation of law, admitted plaintiff's request for admissions of fact. We disagree.

■ Supreme Court Rule 216 states, in pertinent part:

"(c) Admission in the Absence of Denial. Each of the matters of fact and the genuineness of each document of which admission is requested is admitted unless *** the party to whom the request is directed serves upon the party requesting the admission *** a sworn statement denying specifically the matters of which admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters ***." 134 Ill. 2d R. 216(c)(1).

■ Here, plaintiff, in an effort to prove defendant's ownership of the right-of-way and crossing, obtained and served upon defendant an abstract of title report made by Madison County Title Company. Plaintiff requested that defendant admit the truth of its contents. Defendant stated, in its response to the requests, that it did "not have sufficient information at this time to admit or deny the facts." Certainly, defendant had knowledge of its ownership of the property in question. Further, defendant's response regarding the state of its knowledge concerning ownership of the right-of-way and crossing was not made under oath as required by Rule 216. "[The] failure to conform one's response to [the] requirements of this rule [has] been held to be [an] admission[ ] of the truth of the fact asserted." *Roth v. Carlyle Real Estate Ltd. Partnership VII*, 129 Ill. App. 3d 433, 437, 472 N.E.2d 836, 839 (1984). Accordingly, the trial court committed no error.

Defendant further posits that plaintiff's testimony regarding conversations plaintiff had in 1991 and 1993 with railroad workers he encountered replacing track ties and raising the track was inadmissible hearsay. We disagree.

■ "Conversations which are shown to be material and relevant are competent if the parties to the conversation are identified either by direct evidence or by surrounding facts and circumstances." *O'Brien v. Walker*, 49 Ill. App. 3d 940, 952, 364 N.E.2d 533, 541 (1977).

■ Plaintiff, both at trial and in his discovery deposition, testified that on two different occasions, he encountered railroad workers making repairs to the right-of-way and crossing in question. In 1991, plaintiff encountered four trackmen replacing track ties. Plaintiff inquired about the railroad fixing the grade and cutting the brush. The trackmen told plaintiff that these things would be done as soon as they got a work order. Plaintiff again encountered a group of railroad workers in 1993. The workers were raising the track at the crossing with a backhoe. Plaintiff asked the workers if he could change the grade on the crossing, explaining that he had the equipment to repair the grade. The workers told plaintiff that he could not make the repairs, that the railroad would. Further, they told plaintiff to stay off of the railroad's property.

Through plaintiff's discovery requests, he made a diligent effort to obtain the identities of these railroad employees. In response, defendant claimed that it was unaware of any changes to the grade and that it did not have any records showing any changes. It is difficult to fathom that defendant keeps no records concerning the condition of its tracks or which crews work what sections of track. Evidence concerning changes to the grade of the crossing is certainly material to the case and is admissible. *O'Brien*, 49 Ill. App. 3d at 952, 364 N.E.2d at 541. The identity of the workers with whom plaintiff conversed can be ascertained from the surrounding facts. The workers were defendant's employees, working on its track, making repairs defendant ordered. Further, Lloyd Brase, a farmer whose property is adjacent to plaintiff's, testified as to his contact with the railroad workers, as well as the changes in the grade at the crossing. Interestingly, defendant produced no witness to counter plaintiff's claims that the grade of the crossing had been changed as recently as 1993. Accordingly, the trial court properly admitted plaintiff's testimony concerning the contents of his conversations with the railroad employees.

Defendant asserts that it owed no duty to sound a whistle or horn before the private crossing. We find no merit in defendant's position.

■ While there is no statutory duty requiring train crews to sound

the train's approach to a crossing, there is a common-law duty "to give notice of [the train's] approach at all points of known or reasonably apprehended danger." *Emge v. Illinois Central R.R. Co.*, 297 Ill. App. 344, 350, 17 N.E.2d 612, 614 (1938). Here, the farm road crossed the tracks at a 55-degree angle. One attempting to cross the tracks would have to turn and look back over his shoulder to see to the left. Tall corn obstructed the motorist's view from the road until the railroad right-of-way was reached. At that point the motorist's view is further obstructed by tall trees and brush growing on the right-of-way until the driver is within 15 feet of the tracks. As for the road leading to the crossing, the grade is 16% and has loose rock and ballast on the surface, making the crossing difficult to navigate.

Under these circumstances, plaintiff's expert, Berg, opined that where a train is traveling 60 miles per hour and a motorist is traveling at 5 to 10 miles an hour, the motorist would have only one-third to two-thirds of a second in which to see, apprehend, and take action to avoid the approaching train. This is insufficient time for the motorist to respond and to avoid colliding with the train. Berg further testified that the vegetation obstructed the view of both the engineer and the motorist, thereby making it difficult for either to know of the hazard. Accordingly, there was sufficient evidence for the jury to determine whether the conditions found at the crossing constituted a place of reasonably apprehended danger, necessitating a warning of the approaching train. *Emge*, 297 Ill. App. 3d at 351-52, 17 N.E.2d at 615.

In a related subissue, defendant contends that the trial court improperly gave plaintiff's non-IPI instruction on the duty of a railroad at an obscured crossing, while denying defendant's non-IPI instruction on the duty of a motorist at an obscured crossing. Plaintiff's tendered jury instruction No. 28A directed the jury as follows:

> "You are instructed that every rail carrier shall give notice of the approach of its trains at all points of known or reasonably apprehended danger by ringing a bell, or by sounding a whistle or horn."

This instruction is consistent with *Chicago & Alton R.R. Co. v. Dillon*, 123 Ill. 570 (1888). Defendant objects to this instruction, claiming it does not connect the legal proposition to any issue in the case and is both partial and argumentative. Defendant further insists that the trial court improperly denied its jury instruction No. 9, which states:

> "If the view of the crossing is obscured and the location is known to the motorist, it is the driver's duty to approach the crossing with the amount of care commensurate with the situation as it exists."

Defendant argues that the trial court's denial of its jury instruction No. 9 resulted in prejudice to defendant. We reject these arguments.

The trial court has the discretion to determine whether to instruct on an issue, and that discretion will be reversed only where it has been clearly abused. *Green v. Union Pacific R.R. Co.*, 269 Ill. App. 3d 1075, 1086, 647 N.E.2d 1092, 1099 (1995). We find no abuse of discretion.

The trial court did not err in giving plaintiff's jury instruction No. 28A. It is sufficiently clear and fairly and clearly states the law. *Nolan v. Elliott*, 179 Ill. App. 3d 1077, 1085, 535 N.E.2d 1053, 1059 (1989). The trial court tendered to the jury Illinois Pattern Jury Instructions, Civil, No. 73.01 (3d ed. 1995) (hereinafter IPI Civil 3d No. 73.01) in lieu of defendant's instruction No. 9. IPI Civil 3d No. 73.01 states:

> "A railroad crossing is a place of danger. If you believe from the evidence that as [Carol Fritzsche] was approaching the crossing [she] knew, or in the exercise of ordinary care should have known, that a train approaching the crossing was so close to the crossing that it would be likely to arrive at the crossing at about the same time as [Carol Fritzsche's] vehicle, then it was the duty of [Carol Fritzsche] to yield the right of way to the train."

This instruction adequately encompasses defendant's jury instruction No. 9. In tendering plaintiff's jury instruction No. 28A and IPI Civil 3d No. 73.01, the trial court permitted each party to argue their respective theories on the issues in the case. We fail to see in what manner defendant was prejudiced by the court's instructions.

■ Defendant posits that the trial court erred in giving plaintiff's jury instruction No. 10, IPI Civil 3d No. 5.01, known as the "missing witness" instruction. We disagree.

The missing-witness instruction may be tendered when:

> "(1) the missing witness was under the control of the party to be charged and could have been produced by reasonable diligence; (2) the witness was not equally available to the opposing party; (3) a reasonably prudent person would have produced the witness if he believed that the testimony would be favorable; and (4) there is no reasonable excuse shown for the failure to produce the witness."

*Taylor v. Kohli*, 162 Ill. 2d 91, 97, 642 N.E.2d 467, 469 (1994). It is within the trial court's discretion to tender this instruction. 162 Ill. 2d at 97, 642 N.E.2d at 469.

Defendant failed to identify any crew members who worked the stretch of track in question. Certainly, defendant would have available documents identifying the crews who worked on the track in 1993, only a year before the accident. Likewise, defendant clearly must keep information concerning the condition of the tracks in this area and would have information to refute plaintiff's and Brase's allegations that defendant raised the track.

Further, concerning the issue of the deed and Weinel's testimony, defendant knew that the grade was at issue and that Weinel, an engineer and surveyor, would be testifying about the grade and deed provisions with respect to the grade. Defendant chose not to produce any witnesses to testify as to these matters. Therefore, defendant cannot be heard to complain that the trial court tendered the missing-witness instruction where the record amply supports its submission. We find no abuse of discretion.

Defendant next contends that the trial court abused its discretion in failing to permit the jury to consider decedent's income tax returns during their deliberations. Defendant complains that without the income tax returns, the jury could not determine the value of decedent's services as a farmhand. Defendant argues that the inability of the jury to properly assess decedent's services as a farmhand contributed to the excessive amount of the verdict and was prejudicial.

Evidentiary rulings are within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of prejudice to the objecting party. *Herman v. Will Township*, 284 Ill. App. 3d 53, 61, 671 N.E.2d 1141, 1146 (1996). The tax returns were those of typical self-employed farmers. The Fritzsches' reported income fluctuated between 1990 and 1994. The fact that the farm's income varied from year to year is not relevant to the value of the farmhand's services. Further, defendant made no objections to plaintiff's introduction of evidence establishing the value of the typical farmhand's services. Accordingly, we find no abuse of discretion.

Lastly, defendant contends that the jury's verdict for plaintiff is against the manifest weight of the evidence. " 'A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary[,] and not based upon any of the evidence.' " *Maple v. Gustafson*, 151 Ill. 2d 445, 454, 603 N.E.2d 508, 512-13 (1992), quoting *Villa v. Crown Cork & Seal Co.*, 202 Ill. App. 3d 1082, 1089, 560 N.E.2d 969, 973 (1990).

In the case before us, the jury heard the expert testimony regarding decedent's intoxication and its effect on her ability to operate the vehicle. Both defendant's expert, Dr. Long, and plaintiff's expert, Dr. Berg, opined that even a sober person, under the circumstances presented here, would have only one-third to two-thirds of a second available to see, apprehend, and take action to avoid the oncoming train. Clearly, the jury could decide, taking into consideration decedent's intoxication as a contributing factor, that given the condition of the crossing and no warning of the approaching train, it would be impossible for any motorist to stop in a position of safety.

Further, the jury could reasonably conclude that the crossing was a point of known or apprehended danger. Testimony was offered regarding the angle of the crossing, obstructions to the motorist's view, and the steepness and condition of the grade line of the approach to the crossing. In addition to the testimony, both parties offered numerous photographs of the crossing, the surrounding vegetation and fields, and the vehicle decedent was driving. Based upon the evidence presented, the jury could find that defendant was negligent in failing to sound a bell or whistle to warn motorists at the crossing of the oncoming train. Witness credibility and the weighing of evidence are decisions for the trier of fact, whose determinations will not be upset on review unless manifestly erroneous. *Maple*, 151 Ill. 2d at 460, 603 N.E.2d at 515. We believe there is ample evidence to support the jury's verdict.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

CHAPMAN and KUEHN, JJ., concur.