THE DEPARTMENT OF CONSERVATION, Plaintiff-Appellant, v. ELMER NEVOIS *et al.*, Defendants-Appellees.

Fifth District    No. 5—91—0566

Opinion filed September 17, 1992.

Kevin T. Hoerner, of Kassly, Bone, Becker, Dix, Reagan & Young, P.C., of Belleville, for appellant.

Earl H. Sachtleben, of Nehrt, Sachtleben, Fisher, Smith & Kerkhover, of Red Bud, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

The Department of Conservation of the State of Illinois (the Department) appeals from a judgment of the circuit court of Randolph County which reformed certain quitclaim deeds on grounds of mutual mistake to reflect that a disputed parcel of land was not, in fact, owned by the Department's predecessor in title and therefore could not have been validly conveyed to the Department. Two issues are presented for our review: (1) whether the circuit court's finding of mutual mistake was contrary to the manifest weight of the evidence, and (2) if not, whether the circuit court should nevertheless have denied reformation on the grounds that the Department was a *bona fide* purchaser for value without notice of the mistake or of facts which should have put it on inquiry. For the reasons which follow, we reverse and remand.

The record before us established that a woman named Lucy Blow once owned a farm near Fort Chartres in Randolph County. The farm was divided into six tracts, which were referred to at trial as the Yellow, Green, Pink, Blue, Orange and Brown Parcels. The Yellow Parcel was on the north side of Illinois Route 155, while the Green, Pink, Blue, Orange and Brown Parcels were on the south side. All five southern parcels were contiguous and consisted primarily of farmland.

The Green Parcel, which contained a farmhouse and other improvements, was conveyed by Lucy Blow to her daughter, Augusta Nevois, in 1931. Augusta later acquired the Yellow Parcel as well, receiving it under a master's deed executed after her mother's death. In a separate master's deed executed at the same time, the Orange, Brown, Blue and Pink Parcels were conveyed to both Augusta and her brother, Edgar Blow. Shortly thereafter, Edgar Blow quitclaimed to Augusta his interest in the Pink Parcel, which bordered the Green Parcel she already owned. Simultaneously, Augusta quitclaimed to Edgar Blow her interest in the Blue, Orange and Brown Parcels.

Following execution of the pertinent quitclaim deeds, which occurred on July 28, 1955, Augusta was thus left with title to the Yellow, Green and Pink Parcels, while Edgar Blow held title to the Blue, Orange and Brown Parcels. In 1971, Edgar Blow decided to sell his three parcels to the Department for $34,000. After the sale, the Department leased the parcels back to Blow so that he could continue farming them. The Department also petitioned for and obtained tax-exempt status from Randolph County for the property. We note, parenthetically, that a corrected deed later had to be executed by Blow to eliminate a scrivener's error discovered by the Department, but the

correction was purely technical in nature. No additional consideration was paid by the Department, and the revision did not affect the particular parcel which is the subject of this dispute.

In the mid- to late 1970's, the Department initiated negotiations with the Nevois family to purchase the Green and Pink Parcels for inclusion in the Fort Chartres State Park. In the course of the negotiations the Nevois family suggested that the Department also buy the Blue Parcel from it. When the Department protested that it already owned this parcel by virtue of its 1971 purchase from Edgar Blow, negotiations broke off, and the Department commenced this litigation to acquire the Green and Pink Parcels by condemnation (Ill. Rev. Stat. 1979, ch. 47, par. 1 *et seq.*).

In the course of the condemnation proceeding, the Nevois family cross-petitioned for a determination by the court as to ownership of the Blue Parcel. Although its cross-petition did not so specify, the precise relief it requested was an order by the court reforming, on grounds of mutual mistake, the July 28, 1955, quitclaim deeds executed by and between Augusta Nevois and Edgar Blow in order to show that Augusta, and not Blow, had been the true owner of the Blue Parcel. The circuit court ultimately granted that relief following a bench trial. It subsequently made an express written finding that there was no just reason for delaying enforcement or appeal (134 Ill. 2d R.304(a)), and the Department now appeals.

As grounds for its appeal, the Department first contends that the circuit court's determination that defendants were entitled to reformation of the deeds based on mutual mistake is contrary to the manifest weight of the evidence. We agree. The legal standard governing reformation of deeds is well established. A court of equity will reform a deed to correct a situation where the parties intended to say a certain thing and, by mistake, expressed another, provided that the mistake was mutual and common to the parties and was in existence at the time the deed was prepared and executed. The law presumes, however, that the parties' mutual intention is what is expressed in the document itself. That presumption will not easily yield to any claim that the parties' intention was different. (*Tope v. Tope* (1938), 370 Ill. 187, 191, 18 N.E.2d 229, 231.) Accordingly, the quantum of evidence required to reform a written instrument is substantial. A preponderance of the evidence will not suffice. Rather, the evidence must "leav[e] no reasonable doubt as to the mutual intention of the parties." (*Pulley v. Luttrell* (1958), 13 Ill. 2d 355, 358, 148 N.E.2d 731, 733.) That standard was not met here.

The Nevois family claims that when Augusta and Edgar Blow issued quitclaim deeds to one another in 1955, their intention was for Augusta, and not Blow, to take the Blue Parcel. According to the Nevois family, neither Augusta nor Blow (nor their respective spouses, who were also signatories to the quitclaim deeds) realized that the deeds failed to effectuate this distribution of the property. By the time this dispute arose, however, the only surviving signatory to the deeds was Helisy Blow, Edgar's widow. Helisy stated that after the quitclaim deeds were exchanged, her husband never claimed any interest in the Blue Parcel. She also admitted, however, that her husband handled the exchange of the quitclaim deeds with Augusta in 1955 and that she really knew nothing of the details of the transaction.

Lacking more definitive direct evidence, the Nevois family attempted to establish the existence of a mutual mistake circumstantially by adducing testimony which indicated that after 1955, the Blue Parcel was farmed by Augusta's husband and his tenant, not by Edgar Blow. Most of those who gave this testimony, however, were members of the Nevois family itself, and their claim of exclusive possession was not unrefuted. To the contrary, documentary evidence established that Edgar Blow undeniably claimed an interest in the Blue Parcel when he sold it to the Department. Indeed, in an affidavit which he executed as a condition of the sale, Blow specifically recited that he was in exclusive possession of the property.

■ One might argue that in executing the sale documents to the Department, Edgar Blow once again simply did not appreciate what he was conveying. We note, however, that while the legal descriptions of the parcels might not have been intelligible to him (or to any layperson for that matter), the fact remains that the sales documents executed in favor of the Department specifically refer to three separate and distinct parcels, not just two. If Edgar Blow did not realize that the third tract was the Blue Parcel, which it was, what, then, did he believe he was selling? The Nevois family offers no alternatives, and the record gives no indication that Blow owned any other property in the immediate vicinity of Fort Chartres State Park. Under these circumstances, the only possible explanation for Blow's conduct which can be squared with the Nevois family's claim of mutual mistake is that he knowingly attempted to sell the Department property which he realized was not supposed to belong to him, *i.e.*, that he was perpetrating a fraud. Not even the Nevois family is willing to levy such a serious charge here. The circuit court's judgment granting reformation must therefore be reversed.

The Department argues, in the alternative, that even if the evidence here had been sufficient to establish mutual mistake of fact, the circuit court should nevertheless have denied reformation because the Department was a *bona fide* purchaser of the Blue Parcel. Again we agree. Equity will not reform a deed against subsequent *bona fide* purchasers for value who have no notice of the mistake or of facts which should put them "on inquiry." (*Pulley v. Luttrell* (1958), 13 Ill. 2d 355, 358, 148 N.E.2d 731, 733.) Although the Nevois family does not dispute that the Department was, in fact, a *bona fide* purchaser for value, it asserts, as it did at trial, that the Department should have been placed on notice of its competing claim of ownership at the time the purchase was consummated. The Nevois family bases its argument on the proposition that if the Department had only made a physical inspection of the Blue Parcel, it would have readily discovered that land was actually being farmed by the Nevois family. The evidence does not support such a claim.

The Blue Parcel was contiguous to the Orange and Brown Parcels, and all three were under cultivation and unimproved. There was nothing obvious or observable to differentiate them. The Nevois family attempts to make much of the fact that the Blue Parcel is separated from the Orange and Brown Parcels by a road, but it is a township road. Standing alone, a township road is a purely neutral feature, like a rock, or a stream, or a tree. The only acts of dominion or control it reflects are those of the township in constructing it. It tells us nothing about the claims of ownership over the property which it borders. Accordingly, one cannot necessarily assume that property on one side of a township road has a different owner than property on the other side. That this is so is apparent when one considers that before any of this land was conveyed to Edgar Blow and Augusta by the master's deeds in 1955, the property on both sides of the road unquestionably belonged to only one person, their mother, Lucy Blow.

The only other evidence of consequence the Nevois family can point to is the testimony of Mildred Steibel, who stated at trial that a Nevois family tenant who allegedly cultivated the Blue Parcel "raised a nice clean crop where the other one [*i.e.*, the crop on the Orange Parcel] wasn't too good a lot of times" in that it had "a lot of Johnson grass, weeds." We are unwilling to hold, however, that occasional differences in weed infestation are sufficient to place a prudent person "on inquiry" that there might be a problem with ownership. In addition to being largely subjective, such a standard would require prospective purchasers of multiple contiguous tracts of farmland to systematically monitor the property prior to sale for evidence that the

various parcels were being cultivated in a consistent fashion over time. We know of no precedent for imposing such an onerous burden. For purchasers such as the Department, which engages in substantial land acquisitions in far-flung corners of the State, meeting that burden could well prove to be prohibitively difficult and costly.

For the foregoing reasons, the deeds at issue here should not have been reformed. Accordingly, the judgment of the circuit court of Randolph County is reversed, and this cause is remanded for further proceedings with respect to the Department's condemnation action.

Reversed and remanded.

H. LEWIS and WELCH, JJ., concur.