February 19, 1999

NO. 5-97-0323

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_________________________________________________________________

PAUL L. FRITZSCHE, Special Administrator)  Appeal from the

of the Estate of CAROL ANN FRITZSCHE,   )  Circuit Court of

                                        )  Madison County.

     Plaintiff-Appellee,                )

                                        )

v.                                      )  No. 94-L-1227

                                        )

UNION PACIFIC RAILROAD COMPANY,         )

                                        )

     Defendant-Appellant,               )

                                        )

and                                     )

                                        )

DONALD F. CAIN,                         )  Honorable

                                        )  P. J. O'Neill,

     Defendant.                         )  Judge, presiding.

_________________________________________________________________

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Union Pacific Railroad Company, appeals from a judgment in favor of plaintiff, Paul L. Fritzsche, special administrator of the estate of Carol Ann Fritzsche, in a wrongful-

death action for the death of Paul L. Fritzsche's wife, Carol Fritzsche, killed in an automobile-train collision.  The circuit court of Madison County entered judgment on a jury verdict awarding plaintiff $4,300,000 reduced by 25% to $3,225,000 for decedent's contributory negligence.

Defendant has raised numerous issues for consideration.  We will not list the many subissues defendant presents, but rather we will discuss these subissues in the text of the opinion.  On appeal, defendant makes the following claims:  (1) federal law preempts plaintiff's excessive-train-speed claims, (2) no cause of action exists under the Wrongful Death Act (the Act) (740 ILCS 180/0.01 
et seq.
 (West 1994)) for the breach of a warranty deed covenant, (3) the trial court erred in allowing plaintiff's expert to testify concerning previously undisclosed opinions, (4) the trial court erred in excluding defendant's expert's opinions regarding decedent's intoxication, (5) plaintiff's counsel's closing argument comments were inflammatory and resulted in an excessive verdict, (6) defendant has no duty to sound a warning of an approaching train at private crossings, (7) the trial court erred in giving the "missing witness" instruction and plaintiff's non-Illinois Pattern Jury Instruction (IPI) regarding a railroad's duty at an obscured crossing, and (8) the jury's verdict is against the manifest weight of the evidence.  We affirm.

I.

On September 1, 1994, at approximately 7 p.m. in clear weather, decedent was driving her Ford Bronco toward her residence, southbound along a private farm road owned by the Fritzsches.  A  collision occurred at a railroad crossing where defendant's railroad tracks intersect with the farm road.

The train was operated by engineer Donald Cain, who was making his regular run from Villa Grove, Illinois, to St. Louis, Missouri.  The train was traveling westward at 60 miles per hour toward the crossing.  Cain first saw the Bronco when its front end was coming onto the first rail.  At that point the train was 100 to 150 feet from the Bronco.  The train struck the Bronco, killing Carol Fritzsche.  

A cornfield with fully grown corn was on the left side of the road approaching the crossing.  Between the edge of the cornfield and the crossing there were weeds and trees.  The farm road intersects the railroad right-of-way at a 55-degree angle.  One attempting to cross the tracks would have to turn and look back over their shoulder to see to the left.  The grade line of the approach to the crossing is steep, and the surface was covered with loose rock.  Decedent frequently used the crossing.

Just prior to the accident, decedent and her brother were at Strotsie's Tavern.  According to various witnesses, decedent consumed two to three beers between 6 p.m. and 6:30 p.m.  The witnesses drinking with decedent testified that they did not notice any signs of intoxication before decedent left the tavern at 6:30 p.m.  It takes between two and four minutes to get from the tavern to the farm crossing.  The Madison County Coroner's Office took a blood sample from decedent at 10:38 p.m. on the day of the accident.  The blood sample was sent to the St. Louis County Medical Examiner's Office on September 6, 1994.  On September 13, 1994, the toxicology lab issued its report stating that decedent's blood-alcohol content was .291, nearly three times the legal limit.  Dr. Christopher Long, who signed the toxicology lab report, testified that decedent would have had to have the equivalent of 12 to 15 beers in her blood system at the time of her death to attain a blood-alcohol content of .291.  Dr. Long testified that this level of blood-alcohol content would have significantly impaired decedent's perception and reaction time in operating her vehicle.   On February 25, 1997, plaintiff filed his amended complaint pursuant to the Act.  Count I alleged that defendant was negligent in failing to give notice of the approach of the train by ringing a bell, sounding a whistle, or blowing a horn and in failing to reduce the speed of the train.  Count II alleged that defendant was contractu­ally bound to maintain the crossing so as to permit the easy passing of teams (of mules) and to have a grade of less than 8%.  Count II alleged that decedent's travel over the crossing was impaired due to defendant's default in maintaining the crossing.

On February 20, 1997, the jury returned a verdict in favor of plaintiff on both counts, awarding plaintiff $4,300,000.  The verdict was reduced by 25% to $3,225,000 for decedent's contributory negligence.  Defendant's posttrial motions were denied.  Defendant appeals.

Due to the many issues defendant raises, additional facts will be presented as needed for the disposition of this matter.

II.

Defendant initially contends that plaintiff's negligence allegations in count I, to the extent that they allege excessive speed, are preempted by federal law.  See 
CSX Transportation, Inc. v. Easterwood
, 507 U.S. 658, 123 L. Ed. 2d 387, 113 S. Ct. 1732 (1993), 
aff'd
 933 F.2d 1548 (1991).  However, we need not reach this question.

In count I of his amended complaint, plaintiff also alleges that defendant failed to give notice of the approach of the train to the crossing, a place of known or reasonably apprehended danger by reason of the grade, obstructions to the view, and the angle of the intersection.  These claims were not specifically preempted by the Supreme Court in 
Easterwood
.  In 
Easterwood
 the Supreme Court declined to address the question of the preemptive effect of the Federal Railroad Safety Act of 1970 (Safety Act) (45 U.S.C. §§421-

447 (1988 & Supp. II)) on claims for the breach of related tort law duties, such as the duty to slow or stop a train to avoid a specific, individual hazard, since such claims were not before the court.  507 U.S. at 675 n.15, 123 L. Ed. 2d 387, 113 S. Ct. at 1743 n.15.  Accordingly, the preemptive effects of the Safety Act do not reach the negligence claims raised here.

In further support of our holding, we rely on the Eleventh Circuit's holding in 
Easterwood
.  
Easterwood v. CSX Transportation, Inc.
, 933 F.2d 1548 (1991).  In 
Easterwood
, two negligence claims were not before the Supreme Court, namely, CSX's failure to trim vegetation not adjacent to the railbed and CSX's failure to remove a hump in the road which impeded navigation over the tracks.  These issues were addressed by the Eleventh Circuit.  The plaintiff alleged that excessive vegetation on the side of the track obstructed the views of both the engineers and decedent, thereby causing the accident.  933 F.2d at 1554.  The Eleventh Circuit found that the claim was partially preempted because federal law (49 C.F.R. §213.37 (1990)) regulates vegetation on and immediately adjacent to the railbed.  However, the Eleventh Circuit determined that "the Secretary [of Transportation] has not regulated vegetation which is not immediately adjacent to the railbed."  933 F.2d at 1554.  To determine what constitutes the area "immediately adjacent to the roadbed," the Eleventh Circuit relied upon 
Missouri Pacific R.R. Co. v. R.R. Comm'n
, 833 F.2d 570 (5th Cir. 1987).  The 
Missouri Pacific
 court explained:

"The area `immediately adjacent to the roadbed' abuts the roadbed.  Right-of-way property can and often does extend several yards from the roadbed, however.  Consequently, not all right-of-way property lies `immediately adjacent to the roadbed,' and the federal regulation does not `cover the subject matter' of vegetation that is on the right-of-way but not immediately next to the roadbed."  833 F.2d at 577.

Adopting the above reasoning, the Eleventh Circuit in 
Easterwood
 held, "To the extent that Easterwood is bringing a claim for vegetation near, but not immediately adjacent to, the tracks, this claim is not pre-empted."  933 F.2d at 1554.

The plaintiff in 
Easterwood
 also claimed that there was a steep hump in the road elevating the railroad tracks above the roadway which forced traffic to slow down in order to navigate over the hump, thereby contributing to the accident.  933 F.2d at 1556.  The court of appeals, in holding that this claim was not preempted, stated that the defendant did not cite, nor could it find, "any federal statute or regulation regulating the angle of the roadway as it approaches the railroad tracks."  933 F.2d at 1556.

Here, the record indicates that the railroad is responsible for the vegetation.  Plaintiff's expert, Richard Weinel, a registered land surveyor and registered engineer, testified that according to the abstract documents and deeds, the railroad right-

of-way extends 190 feet on each side of the tracks, thereby encompassing the vegetation-covered land near, but not immediately adjacent to, the railbed.  Thus, this area of the right-of-way is not subject to federal regulation and its preemptory powers.

We note that defendant, relying upon 
Pearce v. Illinois Central Gulf R.R. Co.
, 89 Ill. App. 3d 22, 411 N.E.2d 102 (1980), maintains that it has no duty, either statutory or common law, to trim the trees and brush in its right-of-way.  We disagree with defendant's assertion.  
Pearce
 is distin­guishable from the instant case.  In 
Pearce
, the plaintiff was injured in an automobile-train collision on his employer's privately owned and maintained road.  We held in 
Pearce
 that the plaintiff "had a mere license to cross defendant's right-of-way."  
Pearce
, 89 Ill. App. 3d at 31, 411 N.E.2d at 107.  Consequently, the railroad had no duty to guard against the danger of accident.  Unlike in 
Pearce
, decedent was using the farm crossing "under [a] right of an adjoining proprietor of land."  
Atchison, Topeka & Santa Fe R.R. Co.
, 42 Ill. App. 93, 95 (1891).  Further, a contractual relationship exists between decedent and defendant by virtue of the provisions of the 1903 warranty deed.  Therefore, 
Pearce
 is inapposite to this case.    

Regarding the crossing, defendant does not cite to any federal regulations controlling the steepness of approaches to farm crossings, the condition of the surface of the approach, or the angle of the roadway intersecting with the railroad tracks.  

Even if plaintiff's excessive-speed claims were preempted by federal law, plaintiff's remaining negli­gence claims were not subject to preemption and were properly submitted to the jury.  Because the jury returned a general verdict, we do not know on what basis it found for plaintiff.  
Gains v. Townsend
, 244 Ill. App. 3d 569, 575, 613 N.E.2d 796, 801 (1993).  As there were proper bases for this general verdict, the verdict stands.

[The following material is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).]
  

Defendant contends that there is no wrongful-death cause of action under the Act for the breach of a covenant in a warranty deed to maintain the crossing so that it would have a grade of less than 8%.  We disagree.

Section 1 of the Act provides:

"§1.  Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued[] shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony."  740 ILCS 180/1 (West 1994).

In 
Zostautas v. St. Anthony De Padua Hospital
, 23 Ill. 2d 326, 335, 178 N.E.2d 303, 308 (1961), the court held that a breach-of-

contract action brought against a surgeon was not enforceable in a common-law contract action; however, "it could be the basis of liability under the Wrongful Death Act, because it alleges a `default' by defendant and liability to decedent had not death ensued."  
Zostautas
, 23 Ill. 2d at 335, 178 N.E.2d at 308.  The 
Zostautas
 court found no impediment to a party's right to proceed in a wrongful-death action premised upon a contract theory where privity exists between the parties.  23 Ill. 2d at 335, 178 N.E.2d at 308.  "Where a covenant runs with the land, the owner of the land at the time of its breach, whether an immediate or a remote grantee or assignee, may maintain an action for the breach in his own name against any or all of the covenantors."  14 Ill. L. & Prac. 
Covenants
 §6 (1968). 

The warranty deed contained a covenant provision that defendant would maintain the approach to the private crossing at a grade of less than 8%.  The covenant runs with the land, and decedent is a beneficiary of the covenant as one of the owners of the land.  Clearly, decedent is in privity with the original contracting parties and could maintain a wrongful-death action against defendant.

Defendant cites to 
Revell v. Illinois Merchants Trust Co.
, 238 Ill. App. 4 (1925), 
aff'd on other grounds
, 322 Ill. 337 (1926), for the proposition that under the Act decedent could not have recovered damages for personal injury resulting from a breach of the covenant.  In 
Revell
, the plaintiff brought a wrongful-death action against the owner of the building for the failure to furnish heat for an apartment according to the terms of the lease, thereby resulting in the death of the plaintiff's decedent from pneumonia.  The owner, shortly after the decedent took possession of the apartment, leased the building to a McIntosh, and the decedent paid rent to her.  Thereupon, the landlord-tenant relationship and privity of estate ceased, leaving only a contractual relationship between the plaintiff's decedent and the defendant.  The appellate court held that the defendant was under no legal duty to provide the decedent with heat and that the defendant's only liability was for breach of contract.  Thus, the plaintiff had no cause of action for the recovery of damages for personal injury under the wrongful-

death statute.

On appeal, our supreme court, in 
Revel v. Butler
, 322 Ill. 337 (1926), held that because no privity of estate existed between the decedent and the defendant, the decedent could not assert any rights against the defendant nor was the defendant "subjected to liabilities in that regard."  
Revel
, 322 Ill. at 341.  Because the plaintiff had no right of action against the defendant, the plaintiff could not maintain a wrongful-death action.

Revell
 is readily distinguished from the case before us.  Unlike the decedent in 
Revel
, here decedent was a co-owner of the land burdened by the covenant and, thus, was in privity of estate with defendant.  Further, in 
Zostautas
, the court explicitly states that its rejection of the wrongful-death action in 
Revel
 was based solely upon the lack of privity between the defendant and the tenant due to the intervening lease between the defendant and McIntosh.  23 Ill. 2d at 335, 178 N.E.2d at 308.  
Revell
 is inapposite to this case because privity of estate exists between the parties.

Defendant further insists that damages for personal injury as a result of a breach of the 8% grade provision was not within the contempla­tion of the parties at the time they entered into the deed in 1903.  Rather, the purpose of the provision was to ensure the easy passing of teams of mules.  Defendant contends that the rarity of automo­biles in 1903 indicates that personal injury to drivers of automobiles over the tracks was not contemplated by the parties.  Defendant contends, therefore, that decedent could not have brought an action for personal injuries against defendant for its alleged breach of the mainte­nance provision of the deed and, consequently, cannot maintain this wrongful-death action.  We disagree.

While the provision at issue states, the "easy passing of teams," it is clear the parties understood that some mode of transportation would be utilized in accessing the fields and farm house and that the crossing would be maintained in such a way as to facilitate use of the crossing.  The availability of automobiles at the time the parties entered into the deed in 1903 lends addition­al support to our position that the grade requirement extends to modes of transportation in addition to teams of mules.

Likewise, in 1903, injury and death at railroad crossings were not unforeseeable occurrences.  Certainly the parties were familiar with the likelihood of personal injury where an improperly maintained crossing was difficult to access and safely cross.  The grade provision itself amply acknowledges the parties' recognition of the problems inherent in an improperly maintained crossing.  Although the mode of transportation has radically changed since 1903, the foreseeability of personal injury resulting from an improperly maintained crossing remains.  We believe that damages for the personal injuries decedent sustained as a result of defendant's breach of the maintenance provision of the warranty deed cannot be deemed too remote and were well within the contemplation of the parties entering into the deed.  Accordingly, we conclude that plaintiff may bring a wrongful-death action based upon defendant's breach of the covenant to maintain a grade of less than 8% in the 1903 warranty deed.

III.

Defendant also contends that plaintiff's wrongful-death action is barred because the 10-year statute of limitations had run on decedent's breach-of-contract claim at the time of her death.  We disagree.

At trial, plaintiff, on direct examination, testified that the latest breach of the covenant occurred in 1993 when defendant raised the tracks a second time.  On that occasion defendant raised the tracks by 18 inches but did not make any repairs to the grade approaching the tracks.  Decedent's death occurred on September 1, 1994, within one year of the most recent breach.  Thus, the statute of limitations for a breach of contract had not run, and decedent would have had a viable cause of action at the time of her death.  See 735 ILCS 5/13-206 (West 1994).  Accordingly, plaintiff's wrongful-death action is not barred by the expiration of the limitations period for a breach-of-contract action.

Defendant argues that the trial court improperly allowed plaintiff's expert to opine that the deed contained a typographical error.  Defendant further asserts that this opinion should have been stricken because plaintiff failed to disclose it before trial.  We disagree.

"A court *** will reform a deed to correct a situation where the parties intended to say a certain thing and, by mistake, expressed another, provided that the mistake was mutual and common to the parties and was in existence at the time the deed was prepared and executed.  The law presumes, however, that the parties' mutual intention is what is expressed in the document itself."  
Department of Conservation v. Nevois
, 234 Ill. App. 3d 227, 229, 600 N.E.2d 91, 93 (1992).  The evidence required to reform a written instru­ment must "`leav[e] no reasonable doubt as to the mutual intention of the parties.'"  234 Ill. App. 3d at 229, 600 N.E.2d at 93, quoting 
Pulley v. Luttrell
, 13 Ill. 2d 355, 358, 148 N.E.2d 731, 733 (1958).  Whether the evidence offered is sufficient to overcome a presump­tion that the written instrument expresses the true intent of the parties is primarily a question for the trier of fact.  
Upper Level, Inc. v. Provident Venture Corp.
, 209 Ill. App. 3d 964, 966, 568 N.E.2d 531, 532 (1991).

The language at issue here reads, in pertinent part:

"[S]aid crossing and approaches to be sixteen feet wide on top, and to be maintained at all times so as to permit the easy passing of teams, and have a grade of 
not less than 8%
 ***."  (Emphasis added.)

At trial, plaintiff's expert, Weinel, a surveyor, testified that the deed contained a typographical error and that the phrase in question should have read "have a grade of not more than 8%."  Weinel testified that the grade was established for a team of mules, since automo­biles were not in common use in 1903.  Weinel stated that the maximum grade a team of mules could pull a loaded wagon up was an 8% grade.  He further opined that if the grade was greater than 8%, a team would have a problem pulling a load up the grade.  Weinel stated that he has found in his practice that, in Madison and St. Clair Counties, railroad crossings involving farms are not to exceed a grade of 8%.

During trial, defendant vigorously objected to Weinel's testimony regarding the alleged scrivener's error in the deed.  The trial court ruled that the document would speak for itself and that whether there existed an error in the deed was a factual question to be determined by the jury.  Because the issue of the sufficiency of the evidence to overcome the presumption that the written instru­ment expresses the true intent of the parties is for the trier of fact to determine, the trial court did not err in allowing plaintiff's expert's opinion concerning the scrivener's error.  The court properly submitted the matter for the jury's consider­ation.

Defendant next contends that Weinel's undisclosed opinion regarding the scrivener's error went beyond the fair scope of his previously disclosed opinions and should have been stricken by the trial court.  The record does not include a copy of Weinel's deposition transcript.  We have been provided with only a brief answer to plaintiff's Supreme Court Rule 213 (134 Ill. 2d R. 213) interrog­a­to­ry, which states:  

"(2) The plat made by Richard Weinel accurately reflects the condition of the crossing and private road in question on the day the crossing was surveyed."  

Defendant, as appellant, has the burden of presenting a record on appeal that is sufficiently complete to support its assignment of error.  
Foutch v. O'Bryant
, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984).  Having failed to satisfy that burden, there is no basis for holding that the trial court abused its discretion in failing to exclude the expert testimony in question.  In addition, we note that no objection was made at trial based on the failure to disclose the opinion; we therefore could consider this position waived.  See 
Decker v. Domino's Pizza, Inc.
, 268 Ill. App. 3d 521, 644 N.E.2d 515 (1994).

Defendant maintains that the trial court erred in permitting plaintiff to read almost the entire discovery deposition of engineer Donald Cain into evidence purportedly as admissions by a party opponent.   We disagree.     

To preserve an issue for review, a party must make the appropriate objections in the trial court or the issue will be deemed waived on review.  
Gausselin v. Commonwealth Edison Co.
, 260 Ill. App. 3d 1068, 1079, 631 N.E.2d 1246, 1254 (1994).  We cannot conclude that the trial court abused its discretion in allowing plaintiff to read Cain's testimony into evidence at trial because defendant failed to object and made no objection to any specific question and answer that was read from Cain's deposition.

Defendant argues that it was error to exclude the testimony of its expert, Daniel Brown, concerning the effects of alcohol on decedent's driving, as a sanction for defendant's alleged failure to answer sufficiently plaintiff's Rule 213 interrogatories.  We disagree.

Whether a party has properly answered interrogatories is within the sound discretion of the trial court, and its ruling will not be disturbed absent an abuse of discretion.  
Huelsmann v. Berkowitz
, 210 Ill. App. 3d 806, 809, 568 N.E.2d 1373, 1375 (1991).  Supreme Court Rule 213(g) requires that upon written interrogatory, a party must state the subject matter of the opinion witness's testimony, the witness's conclusions and opinions, and the bases thereof, as well as his qualifications.  134 Ill. 2d R. 213(g).

Defendant filed a "disclosure of opinion witness" in which defendant disclosed as an opinion witness Daniel Brown, Ph.D.  The pleading further stated:

"Brown is expected to testify regarding the toxicological effect of alcohol on Carol Fritzsche's operation of a motor vehicle[,] and he is also expected to testify that in his opinion Carol Ann Fritzsche was intoxicated at the time of the accident."

Here, the answer discloses the identity of the witness and  the expert's opinion regarding the decedent's sobriety at the time of the accident.  This blanket statement merely informs that the expert will testify regarding this particular subject matter.  However, it is impossible to determine what opinions are to be rendered and the factual basis of the expert's opinion.  The "answer" is devoid of substance.

The decision to exclude expert testimony is within the sound discretion of the trial court.  
Huelsmann
, 210 Ill. App. 3d at 810, 568 N.E.2d 1373, 1375.  Here, the trial court did not entirely disquali­fy Brown's testimony.  Rather, the trial court excluded only those portions of Brown's evidence deposition that went well beyond the previously disclosed opinion.  Further, defendant was not preju­diced by the exclusion of Brown's undis­closed opinions since Dr. Christopher Long, defendant's second expert, expressed opinions substantially similar to those excluded from Brown's testimony.  We find no abuse of discre­tion in this evidentia­ry ruling.

Defendant complains that the trial court erred in failing to sustain defendant's objection to plaintiff's counsel's remarks in closing that defendant chose to run the risk of killing someone rather than spend money improving the safety of private crossings.  Defendant also urges that it was further prejudiced when the trial court failed to instruct the jury to disregard plaintiff's counsel's remark that the jury "get the attention of the railroad"

by awarding plaintiff substantial damages.  

Attorneys are allowed broad latitude in closing argument.  
Lewis v. Cotton Belt Route--St. Louis Southwestern Ry. Co.
, 217 Ill. App. 3d 94, 119, 576 N.E.2d 918, 932 (1991).  A judgment will be reversed only when the challenged remarks prevent a party from receiving a fair trial.  
Decker v. Domino's Pizza, Inc.
, 268 Ill. App. 3d 521, 644 N.E.2d 515, 522 (1994).  In determining whether an improper closing argument has denied a party a fair trial, the reviewing court "`gives considerable deference to the trial court because it is in a superior position to assess the accuracy and effect of counsel's statements.'"  268 Ill. App. 3d at 531, 644 N.E.2d at 522, quoting 
Moore v. Centreville Township Hospital
, 246 Ill. App. 3d 579, 590, 616 N.E.2d 1321, 1329 (1993), 
rev'd on other grounds
, 158 Ill. 2d 543, 634 N.E.2d 1102 (1994).  A reversal is warranted only upon a showing of substantial prejudice.  
Decker
, 268 Ill. App. 3d at 531, 644 N.E.2d at 522.

While it was arguably improper for plaintiff's counsel to ask the jury to "bring in a verdict that gets the attention of the railroad," the trial court could have reasonably concluded that the effect of counsel's argument was not so prejudicial as to deny defendant a fair trial.  The trial court sustained defendant's objection and instructed the jury to award compensatory damages if they found for plaintiff.  In light of the jury's reduction of plaintiff's award by 25% for contributory negligence, it is apparent that plaintiff's counsel's argument did not so inflame the passions and prejudices of the jury as to result in substantial prejudice to defendant.  Because the challenged remarks did not result in substantial prejudice to defendant, we conclude that defendant was not deprived of a fair trial.

Defendant also claims that the verdict is excessive, and it urges this court to remand the cause for entry of an order of remittitur.  There is no indication in the record that the size of the verdict is the result of jury prejudice, passion, or misconception.  "The ascertainment and assessment of damages are primarily questions of fact and are particularly within the province of the jury to determine."  
Luther v. Norfolk & Western Ry. Co.
, 272 Ill. App. 3d 16, 28, 649 N.E.2d 1000, 1009 (1995).  We will not substi­tute our judgment for that of the jury concerning the amount awarded here.  
Bridgeman v. Terminal R.R. Ass'n
, 195 Ill. App. 3d 966, 975, 552 N.E.2d 1146, 1151 (1990).  

[The preceding material is nonpublishable under Supreme Court Rule 23.]

Defendant next contends that the trial court erred in ruling that defendant had, by operation of law, admitted plaintiff's request for admissions of fact.  We disagree.

Supreme Court Rule 216 states, in pertinent part:

"
(c) Admission in the Absence of Denial.
  Each of the matters of fact and the genuineness of each document of which admission is requested is admitted unless *** the party to whom the request is directed serves upon the party requesting the admission a sworn statement denying specifically the matters of which admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters ***."  134 Ill. 2d R. 216(c)(1).

Here, plaintiff, in an effort to prove defendant's ownership of the right-of-way and crossing, obtained and served upon defendant an abstract of title report made by Madison County Title Company.  Plaintiff requested that defendant admit the truth of its contents.  Defendant stated, in its response to the requests, that it did "not have sufficient information at this time to admit or deny the facts."  Certainly, defendant had knowledge of its ownership of the property in question.  Further, defendant's response regarding the state of its knowledge concerning ownership of the right-of-way and crossing was not made under oath as required by Rule 216.  "[The] failure to conform one's response to [the] requirements of this rule [has] been held to be [an] admission[] of the truth of the fact asserted."  
Roth v. Carlyle Real Estate Ltd. Partnership
, 129 Ill. App. 3d 433, 437, 472 N.E.2d 836, 839 (1984).  Accordingly, the trial court committed no error.

Defendant further posits that plaintiff's testimony regarding conversations plaintiff had in 1991 and 1993 with railroad workers he encountered replacing track ties and raising the track was inadmissible hearsay.  We disagree.

"Conversations which are shown to be material and relevant are competent if the parties to the conversation are identified either by direct evidence or by surrounding facts and circumstances."  
O'Brien v. Walker
, 49 Ill. App. 3d 940, 952, 364 N.E.2d 533, 541 (1977).

Plaintiff, both at trial and in his discovery deposition, testified that on two different occasions, he encountered railroad workers making repairs to the right-of-way and crossing in question.  In 1991, plaintiff encountered four trackmen replacing track ties.  Plaintiff inquired about the railroad fixing the grade and cutting the brush.  The trackmen told plaintiff that these things would be done as soon as they got a work order.  Plaintiff again encountered a group of railroad workers in 1993.  The workers were raising the track at the crossing with a backhoe.  Plaintiff asked the workers if he could change the grade on the crossing, explaining that he had the equipment to repair the grade.  The workers told plaintiff that he could not make the repairs, that the railroad would.  Further, they told plaintiff to stay off of the railroad's property.

Through plaintiff's discovery requests, he made a diligent effort to obtain the identi­ties of these railroad employees.  In response, defendant claimed that it was unaware of any changes to the grade and that it did not have any records showing any changes.  It is difficult to fathom that defendant keeps no records concerning the condition of its tracks or which crews work what sections of track.  Evidence concerning changes to the grade of the crossing is certainly material to the case and is admissible.  
O'Brien
, 49 Ill. App. 3d at 952, 364 N.E.2d at 541.  The identity of the workers with whom plaintiff conversed can be ascertained from the surround­ing facts.  The workers were defendant's employees, working on its track, making repairs defendant ordered.  Further, Lloyd Brase, a farmer whose property is adjacent to plaintiff's, testified as to his contact with the railroad workers, as well as the changes in the grade at the crossing.  Interestingly, defendant produced no witness to counter plaintiff's claims that the grade of the crossing had been changed as recently as 1993.  Accordingly, the trial court properly admitted plaintiff's testimony concerning the contents of his conversations with the railroad employees.

Defendant asserts that it owed no duty to sound a whistle or horn before the private crossing.  We find no merit in defendant's position.

While there is no statutory duty requiring train crews to sound the train's approach to a crossing, there is a common-law duty "to give notice of [the train's] approach at all points of known or reasonably apprehended danger."  
Emge v. Illinois Central R.R. Co.
, 297 Ill. App. 344, 350, 17 N.E.2d 612, 614 (1938).  Here, the farm road crossed the tracks at a 55-degree angle.  One attempting to cross the tracks would have to turn and look back over their shoulder to see to the left.  Tall corn obstruct­ed the motorist's view from the road until the railroad right-of-way was reached.  At that point the motorist's view is further obstructed by tall trees and brush growing on the right-of-way until the driver is within 15 feet of the tracks.  As for the road leading to the crossing, the grade is 16% and has loose rock and ballast on the surface, making the crossing diffi­cult to navigate.

Under these circumstances, plaintiff's expert, Berg, opined that where a train is traveling 60 miles per hour and a motorist is traveling at 5 to 10 miles an hour, the motorist would have only one-third to two-thirds of a second in which to see, apprehend, and take action to avoid the approaching train.  This is insufficient time for the motorist to respond and to avoid colliding with the train.  Berg further testified that the vegetation obstructed the view of both the engineer and the motorist, thereby making it difficult for either to know of the hazard.  Accordingly, there was sufficient evidence for the jury to determine whether the conditions found at the crossing constituted a place of reasonably apprehended danger, necessitating a warning of the approaching train.  
Emge
, 297 Ill. App. 3d at 351-52, 17 N.E.2d at 615.

In a related subissue, defendant contends that the trial court improperly gave plaintiff's non-IPI instruction on the duty of a railroad at an obscured crossing, while denying defendant's non-IPI instruction on the duty of a motorist at an obscured crossing.  Plaintiff's tendered jury instruction No. 28A directed the jury as follows:

"You are instructed that every rail carrier shall give notice of the approach of its trains at all points of known or reasonably apprehended danger by ringing a bell, or by sounding a whistle or horn."

This instruction is consistent with 
Chicago & A.R. Co. v. Dillon
, 123 Ill. 570 (1888).  Defendant objects to this instruction, claiming it does not connect the legal proposition to any issue in the case and is both partial and argumentative.  Defendant further insists that the trial court improperly denied its jury instruction No. 9, which states:

"If the view of the crossing is obscured and the location is known to the motorist, it is the driver's duty to approach the crossing with the amount of care commensurate with the situation as it exists."

Defendant argues that the trial court's denial of its jury instruction No. 9 resulted in prejudice to defendant.  We reject these arguments.

The trial court has the discretion to determine whether to instruct on an issue, and that discretion will be reversed only where it has been clearly abused.  
Green v. Union Pacific R.R. Co.
, 269 Ill. App. 3d 1075, 1086, 647 N.E.2d 1092, 1099 (1995).  We find no abuse of discretion.

The trial court did not err in giving plaintiff's jury instruction No. 28A.  It is sufficiently clear and fairly and clearly states the law.  
Nolan v. Elliott
, 179 Ill. App. 3d 1077, 1085, 535 N.E.2d 1053, 1059 (1989).  The trial court tendered to the jury Illinois Pattern Jury Instructions, Civil, No. 73.01 (3d  ed. 1995) (hereinafter IPI Civil 3d 73.01) in lieu of defendant's instruction No. 9.  IPI Civil 3d 73.01 states:

"A railroad crossing is a place of danger.  If you believe from the evidence that as Carol Fritzsche was approaching the crossing she knew, or in the exercise of ordinary care should have known, that a train approaching the crossing was so close to the crossing that it would be likely to arrive at the crossing at about the same time as Carol Fritzsche's vehicle, then it was the duty of Carol Fritzsche to yield the right-of-

way to the train."

This instruction adequately encompasses defendant's jury instruction No. 9.  In tendering plaintiff's jury instruction No. 28A and IPI Civil 3d 73.01, the trial court permitted each party to argue their respec­tive theories on the issues in the case.  We fail to see in what manner defendant was prejudiced by the court's instructions.

Defendant posits that the trial court erred in giving plaintiff's jury instruction No. 10, IPI Civil 3d No. 5.01, known as the "missing witness" instruction.  We disagree.

The missing-witness instruction may be tendered when:

"(1) the missing witness was under the control of the party to be charged and could have been produced by reasonable diligence; (2) the witness was not equally available to the opposing party; (3) a reasonably prudent person would have produced the witness if he believed that the testimony would be favorable; and (4) there is no reasonable excuse shown for the failure to produce the witness."  
Taylor v. Kohli
, 162 Ill. 2d 91, 97, 642 N.E.2d 467, 469 (1994).  

It is within the trial court's discretion to tender this instruction.  162 Ill. 2d at 97, 642 N.E.2d at 469.

Defendant failed to identify any crew members who worked the stretch of track in question.  Certainly, defendant would have available documents identifying the crews who worked on the track in 1993, only a year before the accident.  Likewise, defendant clearly must keep information concerning the condition of the tracks in this area and would have information to refute plaintiff's and Brase's allegations that defendant raised the track.

Further, concerning the issue of the deed and Weinel's testimo­ny, defendant knew that the grade was at issue and that Weinel, an engineer and surveyor, would be testifying about the grade and deed provisions with respect to the grade.  Defendant chose not to produce any witnesses to testify as to these matters.  Therefore, defendant cannot be heard to complain that the trial court tendered the missing-witness instruction where the record amply supports its submission.  We find no abuse of discretion.

[The following material is nonpublishable under Supreme Court Rule 23].
  

The final jury instruction defendant contests involves plaintiff's jury instruction No. 16A, which sets forth plaintiff's charges of negligence.  Defendant contends that the instruction is unduly prolix and confusing and placed undue emphasis on plaintiff's theory of the case.  We conclude that plaintiff's instruc­tion No. 16A was proper.  The instruction conformed to the issues raised in the pleadings and was sufficiently clear to avoid misleading the jury or unduly emphasizing any aspect of plaintiff's case.  See 
Nolan
, 179 Ill. App. 3d at 1085, 535 N.E.2d at 1059 (1989).  

[The preceding material is nonpublishable under Supreme Court Rule 23].

Defendant next contends that the trial court abused its discretion in failing to permit the jury to consider decedent's income tax returns during their deliberations.  Defendant complains that without the income tax returns, the jury could not determine the value of decedent's services as a farmhand.  Defendant argues that the inability of the jury to properly assess decedent's services as a farmhand contributed to the excessive amount of the verdict and was prejudicial.

Evidentiary rulings are within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of prejudice to the objecting party.  
Herman v. Will Township
, 284 Ill. App. 3d 53, 61, 671 N.E.2d 1141, 1146 (1996).  The tax returns were those of typical self-employed farmers.  The Fritzsches' reported income fluctuated between 1990 and 1994.  The fact that the farm's income varied from year to year is not relevant to the value of the farmhand's services.  Further, defendant made no objections to plaintiff's introduction of evidence establishing the value of the typical farmhand's services.  Accordingly, we find no abuse of discretion.

Lastly, defendant contends that the jury's verdict for plaintiff is against the manifest weight of the evidence.  "`A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreason­able, arbitrary[,] and not based upon any of the evidence.'"  
Maple v. Gustafson
, 151 Ill. 2d 445, 454, 603 N.E.2d 508, 512-13 (1992), quoting 
Villa v. Crown Cork & Seal Co
., 202 Ill. App. 3d 1082, 1089, 560 N.E.2d 969, 973 (1990).

In the case before us, the jury heard the expert testimony regarding decedent's intoxication and its effect on her ability to operate the vehicle.  Both defendant's expert, Dr. Long, and plaintiff's expert, Dr. Berg, opined that even a sober person, under the circumstances presented here, would have only one-third to two-thirds of a second available to see, apprehend, and take action to avoid the oncoming train.  Clearly, the jury could decide, taking into consideration decedent's intoxication as a contributing factor, that given the condition of the crossing and no warning of the approaching train, it would be impossible for any motorist to stop in a position of safety.

Further, the jury could reasonably conclude that the crossing was a point of known or apprehended danger.  Testimony was offered regarding the angle of the crossing, obstructions to the motorist's view, and the steepness and condition of the grade line of the approach to the crossing.  In addition to the testimony, both parties offered numerous photographs of the crossing, the surrounding vegetation and fields, and the vehicle decedent was driving.  Based upon the evidence presented, the jury could find that defendant was negligent in failing to sound a bell or whistle to warn motorists at the crossing of the oncoming train.  Witness credibility and the weighing of evidence are decisions for the trier of fact, whose determinations will not be upset on review unless manifestly erroneous.  
Maple
, 151 Ill. 2d at 460, 603 N.E.2d at 515.  We believe there is ample evidence to support the jury's verdict.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

CHAPMAN and KUEHN, JJ., concur.